## Warden *against* Greer.

In an action against a common carrier by a consignee for not delivering goods in good order, the defendant will not be permitted to give evidence to contradict the bill of lading signed by him, unless it be to prove, that a fraud or imposition was practised upon him.

If the goods were injured in their delivery to the carrier, and he saw and knew it, this would not be such a latent defect as would excuse him from liability for loss, beyond that which was occasioned by the peculiar nature of the article carried.

When loss is occasioned by the negligence of the carrier, and the whole amount of freight is paid to him, in an action against him for such loss, the measure of damages is the value of the article lost, at the place to which it was consigned.

ERROR to the district court of *Allegheny* county.

This was an action on the case by James Greer against John Warden and others, owners of the steamboat Pennsylvania. The facts of the case, and points argued are fully stated in the opinion of the court.

*M'Candless*, for plaintiff in error.
*Forward* and *Lawrie*, for defendant in error.

The opinion of the Court was delivered by

Huston, J.—James Greer, the plaintiff below, brought this suit against the owners of the steamboat Pennsylvania, on account of loss in a cargo of two hundred and forty-eight barrels of molasses, consigned to him by Damarin & Co., of whom he had purchased it. The bill of lading, dated the 3d of May 1836, stated it to have been received in good order, and well conditioned; it was to be delivered in like good order, to James Greer, at Pittsburgh, he paying freight, 3 dollars a barrel; in the margin of this bill, was, "with the privilege of re-shipping." The Pennsylvania, a boat of 400 tons, brought the cargo to Louisville, and the state of the water not permitting a boat of that size to proceed to Pittsburgh, the molasses was put into a warehouse, and with little delay, reshipped two hundred and thirty-one barrels of it on board the Detroit, and seventeen on board the Otsego; and in the usual time it arrived in Pittsburgh. The captain of the Detroit refused to deliver, until the freight was paid; and it was paid, and the molasses landed, and on the same day removed to the store of Greer. At the delivery and removal to the store, it was discovered that two barrels of the number were missing, and seven empty or nearly so; and some others only half full; within a day or two it was gauged, and a deficiency of about two thousand gallons found, out of a quantity, which should have been about ten thousand

[Warden v. Greer.]

gallons.  Molasses barrels contain about thirty-eight or forty gallons.

Many witnesses were examined, and much information elicited as to the trade on the western waters, and on the nature of this article, (molasses,) and the trade in it; for instance, that in warm weather, from fermentation, a barrel will be full, and even running out at the bung hole on its being moved and carried on a dray, though when still, and in a cool place, the cask will not be full by one-fourth or one-third.  That on account of this fermentation and expansion of the molasses, it is necessary to have small vent holes near the bung, on the top of the cask, to prevent its bursting; and and that through these vent holes, from three to five gallons will be lost between New Orleans and Pittsburgh, if the voyage is in warm weather, as this voyage was, and sometimes even a larger quantity.

We also learn, that this article in warm weather always loses by leakage, more or less, according to the goodness of the casks, and that if not stowed carefully, so that the vent holes near the bung are uppermost, the whole of the molasses in warm weather will run out through said holes.  The contest here, was, (after conceding that the lost barrels must be paid for) whether the deficiency was the consequence of defect in the casks, or of bad stowage, or other causes for which carriers were answerable; and one or two questions of evidence arose.  The judge admitted almost all the testimony offered, but he rejected what was said by the mate and clerk of the boat to one another, and to the hands.  In cases in which many witnesses are examined, and much of fact and usage of trade is proved, it is not always possible to prevent something being uttered by a witness, which may not in strictness be evidence; and where counsel opens the case by stating many facts and circumstances which will be proved, it sometimes happens, that more is stated than can be proved, and this leads to the admission of evidence, under an expectation, that it will be followed by something which will make it relevant and pertinent in the case. The judge in this case, seems to have adopted the only mode which is really practicable, that is, to have admitted all which might have a bearing on the case, and trusted to the good sense of the jury, in discriminating, after hearing the charge of the court, between what was relevant and irrelevant.  Some difficulty arose, as to whether the owners could contradict the bill of lading.  This is not generally permitted, but cases may occur, in which it may be proved there was imposition on the captain, or a mistake of both consignor and captain.  The captain does not open or otherwise examine the casks.  Suppose he receives a barrel of corn, instead of a barrel of coffee; or a barrel of cider, instead of Madeira wine; or a package of cotton linen, instead of flaxen linen; it would seem, his bill of lading would not, and ought not to exclude him from proving this, whether

it arose from mistake or fraud in the consignor. But it would unsettle every thing, to permit a captain to receipt a bill for one hundred barrels of molasses, and at fifteen hundred miles distance, prove by his hands, that the barrels were not half full; or to receipt for them as in good order, and prove they were in so bad order, as to leak a gallon or a quart an hour. Taking the testimony and charge together, there was no error in the admission or rejection of evidence, or the remarks on it.

The next matter assigned as error, is, that the court charged that the loss of hoops, and leakage thereby, which occurred while the consignor was carrying the casks to the wharf, and unloading them from the drays, so that the captain might put them on his boat, when seen and known by the carrier, ought to have been remedied or the goods rejected; that this would not be such a latent defect as would excuse the carrier.

In this, there was no error, even admitting the case in the appendix to *Jones on Bailment* 12; yet, that would only apply where the defect of the cask or box was latent, and not known to the carriers, and will by no means excuse one who saw the hoops fall off a cask, and it leaking in consequence, and yet signed a bill of lading, stating it to have been received in good order. The law as to the responsibility of a carrier is said to be severe; it is, however, firmly settled, and long settled. Difficulty sometimes occurs, as to what will bring their case within the exceptions to their liability. The defendants have nothing to complain of in the opinion of the court in this case, for the jury were told, that no care or attention of the carrier could prevent the fermentation and expansion of the molasses in warm weather, by which a considerable quantity of molasses would be lost: this loss, therefore, arising from a law of nature, was necessary, and came within the exception, which is technically called an " act of God." And again, " the defendants ought not to be answerable for loss occasioned by the peculiar nature of this article, carried at that season of the year, nor leakage arising from secret defects of the casks, which could not have been observed or remedied after the casks were stowed away, but for all other loss, not thus occasioned, or shown by defendant to have originated from causes beyond their control they are answerable."

The last error assigned, is, in telling the jury, for what portion of this loss, you find the defendants liable, you will find the value of that amount, at Pittsburgh price and interest.

And the counsel cited, and relied on the case in 3 *Caines* 319. That was a case of damages for not carrying the article after contracting to do so, and where defendant had not been paid freight for carrying it; and, on the facts in that case, may be perfectly right in this particular; but the law is otherwise, where the carrier has been paid for the carriage, and delivers only a part of the

[Warden v. Greer.]

goods, or delivers them damaged: this was settled in this court. 12 *Serg. & Rawle.*

Judgment affirmed.