Bissel et al. *v*. Price.

ORIN P. BISSEL *et al.*, Appellants, *v.* HEMAN PRICE, Appellee.

APPEAL FROM PEORIA.

A bill of lading is in the nature of a receipt, and may be explained or contradicted by parol proof.

A bill of lading is *prima facie* evidence, and the carrier must prove that the goods were not as therein described. If the goods are damaged in other hands, but coming to the carrier in the course of transit in apparent good order, he may recover his freight and advances, and the owner must seek his redress, either against the party in whose hands they were injured, or under his original contract of shipment.

A common carrier, or a warehouseman, may receive or forward goods, in transit, and recover the charges for freight, etc., incurred in the course of transportation, which have been paid.

PRICE brought his action against Bissel & Co., to recover for advances made by him on certain merchandise received of J. D. Harmon & Co., who were forwarding merchants at Peru, and for freight for transporting the same from Peru to Peoria. To this action the defendants interposed several pleas. Non assumpsit, payment, and a plea alleging that Price was indebted to them (Bissel & Co.,) for neglecting, as common carriers, to deliver to them, in good order and condition, certain merchandise, consisting of seventeen packages, in good order and condition, which was delivered to him as a common carrier, at La Salle, to be conveyed to Peoria, as by bill of lading, which is set out in *hæc verba*, which he neglected to do, but that the merchandise was injured by wet and mould. Upon these pleas, issue was joined. The cause was tried by PETERS, Judge, and a jury, at March term, 1855, of the Peoria Circuit Court. Verdict and judgment for the plaintiff, in the Circuit Court. The defendants then brought this appeal.

The evidence showed that the packages were received in apparent good order, and that they were not injured between La Salle and Peoria; that they were delivered as they were received; that Price paid Harmon & Co. the back charges on the goods, amounting to $20; that Price was the captain of the steamer Garden City, plying between La Salle and Peoria. The goods were some of them shown to have been damaged by wet and mould, but the testimony was, that this injury could not have occurred while the goods were upon the steamer.

The defendants moved to exclude all testimony which went to show that the goods were injured before they were placed upon the steamer, on the ground that the bill of lading, which admitted that the goods were in good order, was conclusive against the plaintiff, which motion was overruled.

The following instructions were given, at the instance of the plaintiff:

" If the jury believe, from the evidence, that the plaintiff was master of the Garden City, at the time of the receipt and transportation of the goods described in the bill of lading, he is entitled to maintain his action.

That if plaintiff, as master of the steamboat, carried the goods of the defendant from La Salle to Peoria, and there delivered them, he is entitled to recover the stipulated price of such transportation, and the bill of lading is presumptive evidence of such price, and the quantity of goods carried.

That if the plaintiff, as such master, being a common carrier, received such goods in the ordinary course of business, and on the proper line of transit, and paid freight and charges thereon, to preceding carriers or warehousemen, he is entitled to receive the amount so paid, although the goods may have suffered damage before they reached the plaintiff, while in the hands of some prior carrier.

That the plaintiff is entitled to recover the amount of freight stipulated, if he performs his contract, and the amount of the previous charge paid by him, in the ordinary course of business as a common carrier, unless the goods were injured in his hands, and in this event only, can the amount of such damages be recovered from such freight and charges.

That a bill of lading may be explained by evidence, and if the jury believe, from the evidence, that the goods were injured or wet before they came into the plaintiff's hands, and that they were externally in good order and condition when plaintiff received them, and that the plaintiff could not, without opening, have ascertained their actual condition, the mere fact of his receipting for them in good order and well-conditioned, will not preclude him from recovering the full amount of freight and charges proved."

The following instructions, as qualified by the court, by the insertion of what appears in brackets, were given at the instance of the defendants :

" First. Before the plaintiff can recover for advances made or paid by the Garden City to Isaac D. Harmon & Co., he must prove, to the satisfaction of the jury, that Isaac D. Harmon & Co. had a valid and lawful claim on the goods to that amount, and evidence that the Garden City, or her owners or clerks, made such payments, does not prove that the amount was lawfully due to Harmon & Co. [But if Harmon & Co. were forwarders, or warehousemen, and received the goods as such, then the jury may infer that the money was rightfully paid to them.]

Second. The plaintif can only recover such amount as he may be entitled to by the evidence.

Third. The bill of lading shows that the goods were in good

order and condition at the time they were received by the plaintiff, and if the jury believe, from the evidence, that the goods were injured before, and at the time they were received by the defendant, [and after they were received by the plaintiff on the Garden City,] then the defendants would have a right to offset their damages against any valid claim the plaintiff has proved against the defendants; and if the defendants' damages exceed the amount of plaintiff's claim, as proved, the jury may return a verdict in favor of defendant for such overplus.

Fifth. A consignee is the person to whom the goods are consigned, and before Isaac D. Harmon & Co. could lawfully take the defendants' goods into their possession, and make charges upon them, they must have had some authority from the defendants, or in some other way, thus to take them; and if there is no evidence, satisfactory to the jury, of such authority, then the mere fact that the plaintiff paid Harmon & Co., will not justify the jury in finding a verdict for such sum of money.

Sixth. The bill of lading, offered in evidence by the plaintiff, recites that the goods were in good order and condition at the time they were received on board the Garden City, and by said bill of lading the plaintiff contracted and promised to deliver said goods, in like good order and condition, to the defendants, at Peoria, and if the jury believe, from the evidence, that the goods were not delivered in good order and condition, [as when received by the plaintiff,] and that the defendants were injured thereby, then the defendants may offset their injury or damages against any valid claim the plaintiffs may have proved against the defendants.

Seventh. The defendants, having offered the bill of lading in evidence, cannot be allowed to contradict or explain it, unless in showing fraud or mistake, and fraud or mistake cannot be inferred, but must be proved, [though it is competent for the plaintiff to show that the goods were damaged before he received them, and that this was unknown to him at the time he received them.]

If the jury believe, from the evidence, that there was an agreement between the captain of the steamboat Garden City, or his authorized agent, to allow the defendants the amount of damages that appraisers, chosen by the parties, should decide were done to the goods shipped by the plaintiff for the defendants, which said goods were in transit to the city of Peoria, the jury should then, in that case, allow the defendants the full amount of such appraised damages so made by said appraisers.

Grove and McCoy, for Appellant.

W. F. Bryan, for Appellee.

CATON, J.   This record presents several questions of commercial law of considerable interest, though of no great difficulty. They are such as arise in and affect every case of the transportation of goods from one part of the country to another, which are forwarded over the different public conveyances, by land and water, acting as common carriers, which are spread all over the country, doing an incalculable amount of business, and which are, in a manner, connected together by warehousemen through whose hands the goods they carry pass from one carrier to another.   These various institutions, if the expression may be allowed, are an immense public convenience, if properly and honorably conducted; while, on the other hand, their position enables them to practice a constant system of peculation, oppression, fraud and injustice where there is a disposition to pursue such a course, to which individuals are often inclined to submit, rather than vindicate their rights at a cost and trouble greater than the amount suffered by the wrong perpetrated. While, therefore, it is the duty and the policy of the courts, and of the law, to protect these forwarders and carriers, when they have acted fairly, justly and in good faith, so on the other hand, they cannot be too strict in visiting them with the most exemplary judgments, whenever a disposition is evinced to prey upon those whom they suppose are at too great a distance to protect their rights, or prefer to submit to the injustice, rather than the expense of a prosecution.   Whenever such cases are met with, examples should be made, but care should be taken that the innocent are not made to suffer for the misdeeds of the guilty.

General convenience and the public wants, may be said to be the legislators by which this branch of the law has been formed. As these may dictate, it adopts itself to new modes of conveyance and new channels of trade, and while it may not always be able to protect some against inconvenience and others against injustice, by the adoption of such rules as will, in general, forward the commercial transactions of the community, with the least delay, and the least embarrassment possible, yet, in this respect, it suffers an infirmity common to all other branches of the law.   Were such rules adopted as would always secure the owner of goods against any possibility of a loss, from the carelessness and the dishonesty of every carrier or warehouseman, through whose hands they may have passed in the course of a long journey, the innocent would often have to suffer for the wrongs of the guilty, for in no other way, in many cases, could the result be accomplished.   In this way would the channels of commerce become so oppressed with dangers, that the price of transportation would become so enhanced, that the tax upon the community would be greater than the benefit to be derived from

this character of insurance.   So, on the other hand, should the honest carrier always be protected from liability for losses when he has acted in good faith, and with due caution, such facilities to despoil goods with impunity would be afforded to dishonest carriers, that the rights of owners of goods would be too insecure and precarious.

The facts in this case are succinctly these: J. D. Harmon & Co., warehousemen at La Salle, shipped a quantity of goods packed in tight cases, on board the plaintiff's steamboat, belonging and consigned to the defendants at Peoria.   Harmon & Co. had advanced charges upon the goods, and shipped them, subject to these advances and their charges.   Upon receiving the goods on board his steamer, the plaintiff advanced to Harmon & Co. their charges, and executed bills of lading, in the usual form, acknowledging the receipt of the goods in good order and condition, and agreeing to deliver them to the consignee, at Peoria, in like good order and condition, he paying the charges thus advanced, as specified in the bill of lading, and also the plaintiff's freight, for the transportation.   Upon the arrival of the steamer at Peoria, the goods were landed and put into the hands of W. C. Boilvin & Co., warehousemen there, with the bill of charges, freight, etc., from whom the defendants received the goods.   The packages at this time were in apparent good order, as when received by the plaintiff, at La Salle, but upon opening the cases, after they were received at the defendants' store, the goods were found to be damaged.   Whereupon the defendants refused to pay the plaintiff the amount of his freight and advances to J. D. Harmon & Co., for antecedent charges on the goods, to recover which, this suit was brought.   Upon the trial, the evidence satisfactorily established that the damage was done to the goods previous to their coming into the plaintiff's possession, and that they were delivered to the defendants in as good order and condition as when received by him of Harmon & Co., at La Salle.   The admissibility of this proof, in contradiction to the bill of lading, was objected to, and admitted by the court, and this presents the first question to be considered.   It is said that the bill of lading is the plaintiff's written acknowledgment that the goods were in good order when received by him, which he shall not be permitted to deny or contradict.   The simple answer to this objection is, that it is not the law.   The bill of lading is, in contemplation of law, in the nature of a receipt, so far as the quantity and condition of the goods is concerned, and as such, is open to explanation, or even contradiction, by parol proof.   The forwarding business would become impracticable, if the carrier, when he receives the goods, is bound to open and examine every package, before

he signs a bill of lading for them. The bill of lading, no doubt, is *prima facie* evidence that the goods were as described therein, and throws upon the carrier the burthen of showing that they were different, and that he was deceived or defrauded when he signed the bill of lading. Were the rule otherwise, the carrier could never safely sign a bill of lading, especially in the form now universally in use, without subjecting the goods to an examination which would be immeasurably detrimental to shippers, vastly more injurious in its general operation upon them, than the rule of law which lets in the very truth of the case, and exonerates one from liability, who is in fact guilty of no wrong. But as a question of authority, we consider the rule as well-settled. Angel's Law of Carriers, Sec. 231; *Bates* v. *Todd*, 1 Moo. and Rob. 186; *Warden* v. *Green*, 6 Watts, 424.

It is next objected that the plaintiff had no right to make the defendant his debtor, without his knowledge or consent, by paying to Harmon & Co. their charges against the goods; that it was in effect nothing less than purchasing of them a demand against him, the legal title to which could not be thus transferred. This is in fact invoking a principle of law, when it has no fitness or application to the transaction to which it is sought to be applied. The reason of this is founded in commercial convenience and necessity, from which has originated a universal custom, pervading the whole country, indeed, it might be said, the whole commercial world, which has been so long established and so universally known, that the courts themselves have long taken notice of and recognized it, and hence it has become a part of the law itself. This commercial convenience and universal necessity is the true reason why this principle has been engrafted upon and become a part of the law itself, although for the sake of harmony, and to avoid apparent contradictions in legal maxims, artificial reasons have been invented, and legal implications raised, in order to support it. Thus it has been said that every carrier and intermediate warehouseman, through whose hands goods are shipped, becomes the agent of the owner of the goods, and has implied authority from him, as such agent, to advance previous charges upon them, and collect them again from the next carrier or warehouseman, into whose hands he delivers them. By such an implication of authority, the creation of an agency and the appointment of an agent by the owner is presumed, which is often in direct contradiction to the truth of the case, for goods often, in the course of their transit, get into the hands of persons, in direct and positive contradiction to the express directions and appointment of the owner, and yet such parties are held to have been appointed his agent to pay previous charges upon the goods, and are authorized to contract

a debt for the owner, and charge him with a liability, by paying money to his use, to satisfy such previous charges.

But it is of little moment, upon what ground this authority of a stranger, to create a liability against a party of which he was entirely ignorant at the time, and to which he would, perhaps, have objected, had he known it, is placed. Whether we say we will presume authority from the owner, in cases where, had he been consulted, he would never have conferred it, or whether we say that the law, originating in general convenience and the necessities of trade, and not the party himself, has conferred the authority to forward the goods, and charge them as they pass into different hands, with all previous charges incurred in the course of transportation, the result is the same; and it is of more moment to inquire what is the nature, character and extent, of the authority thus created, either by the law or the party. This authority extends no further than is reasonably required by the necessities of the case. It is strictly limited by the requirements of commercial convenience. While the warehouseman or the carrier is authorized to advance for and on account of the consignee, previous charges upon the goods, he is bound to act in good faith toward, and to carefully watch the interests of, the owner, whoever he may be. He is bound to do this, to the same extent that a prudent man would, were he present and acting for himself. He must see that the goods are in apparent good order, as described in the previous bill of lading, or, if not, use reasonable exertions to ascertain how they became damaged, and the party liable therefor. So, also, to the same extent, he must see that the previous charges are reasonable before he is authorized to pay them; for it is not every charge, which every extortioner, through whose hands goods *in transitu*, may see fit to impose upon them, that he is authorized to pay, and thus fix upon the owner a certain liability to that extent. So, also, he must use due discretion and dispatch in forwarding them. In a word, in discharging this duty, or if you please, in performing this agency, he must act in good faith, and with reasonable circumspection and diligence. When he has done this, he has done what the interest of the owner required, and what the law has imposed, and the owner is bound to recognize and sanction it. *White* v. *Vaun*, 6 Humph. 70; *Bowman* v. *Hilton*, 11 Ohio, 303; Angel on Carriers, Sec. 414. Such, we understand to be the duty of those engaged in the public employment of forwarding goods, and such the obligations of the owner of the goods, forwarded by means of common carriers; and such were substantially the principles of law laid down by the circuit court for the government of the jury in their deliberations upon the evidence in this case. Under such instructions, the jury found a verdict for the

plaintiff for the amount of his advances and freights, deducting nothing for the damages which the goods had sustained while in other hands. For those damages he must seek his remedy under his original contract of shipment, if, as is usually the case, that be broad enough to protect him, or against the party in whose hands the goods were actually damaged.

The judgment of the circuit court must be affirmed.

*Judgment affirmed.*