# WALLACE & KINGMAN
## v.
## JOHN M. LONG.

1. BILL OF LADING—NOT CONCLUSIVE IN ITS RECITALS.—A bill of lading is as between the original parties thereto, open to explanation, and either party may show that the actual amount or quantity shipped is different from the amount specified in the bill.

2. CONSIGNOR ENTITLED TO EXCESS IF ANY OVER AMOUNT SHOWN IN THE BILL.—A bill of lading contained this condition: "All the deficiency in cargo to be paid for by the carrier and deducted from the freight, and any excess in the cargo to be paid for to the carrier by the consignee." *Held*, that a proper construction of this clause would not authorize the carrier, in case of an excess in a cargo, to collect pay for the same from the consignee, and hold the proceeds as his own.

APPEAL from the Superior Court of Cook county; the Hon. ELLIOTT ANTHONY, Judge, presiding. Opinion filed May 4, 1881.

Mr. E. A. OTIS, for appellants; that a bill of lading is open to explanation, cited Bissell v. Price, 16 Ill. 408; Strong v. G. T. R. R. 15 Mich. 205; Abbe v. Eaton, 51 N. Y. 410; Meyer v. Peck, 28 N. Y. 590; Ill. Cent. R. R. R. R. Co. v. Cobb, 72 Ill. 148; Ellis v. Willard, 9 N. Y. 529; Sears v. Wingate, 3 Allen, 103; O'Brien v. Gilchrist, 34 Me. 554; Price v. Hartshorn, 44 N. Y. 94.

Any modification of the common law liability of the carrier must be assented to by the shipper: Boscowitz v. Baker, 98 Ill. 523; Erie Railway Co. v. Wilcox, 84 Ill. 239.

This is not a case of money voluntarily paid with full knowledge of the facts: C. & A. R. R. Co. v. C. V. W. Coal Co. 79 Ill. 121; Strong v. G. T. R. R. Co. 15 Mich. 205; Harmony v. Bingham, 12 N. Y. 97; Clinton v. Strong, 9 Johns. 370; Shaw v. Woodcock, 7 B. & C. 73; Chase v. Dwinal, 7 Me. 134; County of LaSalle v. Simmons, 5 Gilm. 513; Ripley v. Gibson, 9 Johns. 201; Taylor v. Taylor, 20 Ill. 650; Watson v. Wolverton, 41 Ill. 241; Bradford v. Chicago, 25 Ill. 411; Rew v. Barker, 3 Cow. 280.

Mr. WILLIAM H. CONDON, for appellees, cited Merrick v. Certain Bushels of Wheat, 3 Fed. Rep. 340.

WILSON, J    The plaintiffs, Wallace & Kingman shipped on board the defendant's schooner Groton, at Chicago, a cargo of flax-seed, consigned to Brundige, Bruce & Co., Buffalo, to be by them forwarded to R. Colgate & Co. New York. The seed was loaded in bulk, from the private warehouse of the plaintiffs, and while being loaded was weighed in a hopper which would hold about one hundred and fifty bushels. A tally was kept by tally men, employed by each party.

On the morning after the vessel started for Buffalo, the defendant gave to the plaintiffs a bill of lading, made out from the report of the tally men, which was as follows: "Shipped in good order and condition by Wallace & Kingman as agents

and forwarders, for account and at the risk of whom it may concern, on board the schooner *Groton*, whereof P. C. Schma-kels is master, now in the port of Chicago and bound for Buffalo, the following articles as here marked and described, to be delivered in like good order and condition, as addressed in the margin, or to his or their assignees, or consignees, upon paying the freight and charges as noted below. All the deficiency in cargo to be paid for by the carrier, and deducted from the freight, and any excess in the cargo to be paid for to the carrier by the consignee. In case the grain becomes heated while in transit, the carrier shall deliver his entire cargo, and pay only for all deficiency exceeding five bushels each 1,000 bushels. (The dangers of navigation, fire and collision excep-ted.)

The *Groton* was loaded wholly from the plaintiff's ware-house, and with their flax-seed. Upon her arrival at Buffalo, the cargo was unloaded into an elevator for re-shipment by canal to New York, and was found to contain 305 bushels more seed than the amount named in the bill of lading. The master of the vessel demanded of the consignees, Brundige, Bruce & Co. pay for the surplus 305 bushels, amounting to $396.96 in addition to the freight and charges, and they paid the same to the defendants' agent at Buffalo.

Upon being informed of the payment the plaintiff made a demand on the defendant for its re-payment to them, which being refused, this suit was brought to recover the money.

It was admitted on the trial that the defendant was the owner of the vessel, and was liable, if the plaintiffs were enti-tled to maintain an action for the money. There was a judg-ment for the defendant in the court below.

It is insisted by the defendant that the clause in the bill of lading which provides that any excess in the cargo is to be paid to the carrier by the consignee, is a contract by virtue of which the carrier is entitled to receive and retain as his own whatever amount the cargo happens to overrun the number of bushels of seed stated in the bill of lading; in other words, that in consequence of a mistake in weighing, by which the amount was erroneously stated in the bill at 305 bushels

less than the actual amount shipped, the defendant became the owner in his own right of the proceeds of the overrun. It is not denied that the entire cargo shipped was the flax-seed of the plaintiffs, and was consigned to their agents, Brundige, Bruce & Co., at Buffalo. It is not claimed that any seed was added to the cargo during the voyage, nor is it disputed that the identical seed shipped by the plaintiffs, and that only, was delivered to the consignees. The claim of the defendant is therefore, in effect, that the stipulation in the bill of lading is not only a contract that the carrier is to have the overrun, but that it is a contract that the bill of lading shall furnish the only evidence of the amount of the cargo, or in other words, that the recital in the bill as to the amount of the cargo cannot be contradicted.

If such was the intention of the parties, the language expressive of such intention should be so clear and explicit as to admit of no other reasonable construction, for if the position assumed by the defendant be sound, it would follow that if a bill of lading were to erroneously state the number of bushels at two thousand, when the actual amount was twenty thousand, the carrier would be entitled to eighteen thousand bushels, or nine-tenths, and the shipper to one-tenth. A court may well pause when asked to put a construction on a bill of lading or other contract which would result in so glaring an injustice. Whatever the real purpose of the clause in question may have been, we cannot suppose that the parties intended to cut themselves off from the right to correct mistakes.

The law is well settled that a bill of lading is, as between the original parties thereto, open to explanation, and either party may show that the actual amount or quantity shipped is different from the amount specified in the bill. Like an ordinary receipt, it is *prima facie* evidence only, and not conclusive, as to either the amount or condition of the articles shipped. Angell on Carriers, § 231; Bissell v. Price, 16 Ill. 408; Ill. Cent. R. R. Co. v. Cobb, 72, Ib. 148; Ellis v. Willard, 5 Selden, 529; Meyer v. Peck, 28 N. Y. 590; Abbe v. Eaton, 41 Ib. 410; Warden v. Green, 6 Watts, 424.

Treating the instrument in question as a mere bill of lading it was the right of either party to it to contradict its statement as to the amount of seed shipped, and to show the actual amount.

Does the additional stipulation take away such right?

In Abbe v. Eaton, *supra*, decided by the Commission of Appeals of New York, which was an action brought to recover a balance alleged to be due for freight upon a load of corn from Buffalo to Albany, the bill of lading contained the following clause: "All damages caused by boat or carrier, or deficiency of cargo from quantity as herein specified, to be paid for by the carrier and deducted from the freight, and any excess on the cargo to be paid for to the carrier by the consignees."

When the corn reached Albany and was weighed, it was found to be seventy-one bushels short of the amount stated in the bill of lading. A claim for this shortage was interposed by the shipper, to which the carrier replied by showing that he delivered all he had received. The court held that he was not concluded by the amount named in the bill of lading, and that the clause in the bill was not to be construed as an agreement that the bill of lading should furnish the only evidence of the amount shipped, or that the carrier was bound by the amount therein specified, but that the same was open to proof as to the actual amount received.

In relation to the clause requiring payment by the consignee to the carrier for the excess, the court said: "We do not perceive the precise purpose of this clause, unless it was to provide that the carrier should receive freight upon any additional quantity above what is specified in the bill of lading. If it was intended by the parties that the carrier should have as his own the value of any corn over and above the amount specified, whether there was any mistake in the amount specified or not, the language expressing such an intent would have to be very strong and explicit. To hold under such a bill of lading that if there happened by mistake in weighing at Buffalo to be 500 bushels more than was specified, the carrier could claim this quantity, and the shipper would be precluded from showing any mistake, would violate principles of law and equity."

Wallace & Kingman v. Long.

In Meyer v. Peck, 28 N. Y. 590, the bill of lading contained these words: "Any damage or deficiency in quantity the consignee will deduct from the balance of freight due the captain." The suit was brought to recover for freight, and the defendants sought to recoup a claim for one hundred and twenty-five bushels deficiency from the amount stated in the bill of lading. It appeared that the carrier had delivered at Rochester the whole amount he received at Buffalo, but it was insisted that the amount as stated in the bill of lading was not open to inquiry. The court said: "This must be understood to mean *the quantity received*. It is no more a guaranty than the former part of the bill, which he is allowed to explain and to some extent contradict. It can only be understood as an agreement to pay for that portion, if any, which shall be found to be deficient of what he received."

Mr. Justice Denio, in Ellis v. Willard, 5 Selden, said: "It (the bill of lading) is very high and authentic evidence of the quantity and condition of the goods, but is only evidence, and not between the primary parties an estoppel."

We think the rule of construction held in these cases is salutary and just, indeed is indispensable to the protection of shippers and carriers alike. In the haste and confusion incident to the loading of grain or other commodities, errors and mistakes are constantly liable to occur, and should always be open to correction. The right to correct mistakes should and does pervade all the transactions of business life, and no contract should be construed to have taken it away that is not couched in the most explicit and unambiguous terms, indicating the clear intention of the parties to deprive themselves of such right. Whatever may have been the purpose of the clause under consideration, there is nothing in it indicating that the parties intended to contract that there should be no correction of errors.

The instrument is in the usual form of a bill of lading, with this stipulation added, "all deficiency in cargo to be paid for by the carrier and deducted from the freight, and any excess in the cargo to be paid for to the carrier by the consignee." Now, whether it be assumed that the clause was merely de-

signed to insure the faithful transportation and delivery by the carrier of all the goods actually shipped, or whether the true construction be that the carrier was to be paid his freight on any excess in the cargo over the amount stated in the bill of lading, or whether the consignee was to pay to the carrier the value of the overrun for the use and benefit of the shipper—whichever of these, or whatever other construction may be placed upon the stipulation, there is nothing in its terms that can be construed as indicating in the slightest degree an intention to cut off the right of the parties to correct mistakes, if any should be discovered.

This being so, the bill of lading must be left to stand upon the same footing as ordinary bills of lading, open to inquiry as to the amount of goods actually shipped; and as has already been seen, it is beyond dispute that the defendants delivered no more seed than he received. Upon principle it would seem that if a carrier deliver all the goods he has received it ought to be held to be a fulfillment of his undertaking, and on the other hand, if he has received more of the shipper's goods than has erroneously been stated in his bill of lading, he should not be deemed to have thereby become their owner, but should be treated as a trustee holding the goods, or their proceeds, if turned into money, for the use and benefit of the owner.

But construing the language of the bill of lading most favorably to the defendant, we are of the opinion that its terms are not sufficiently clear to divest the title of the plaintiff to the flax-seed actually shipped in excess of the amount stated in the bill of lading, and the money which the consignees paid to the defendants for the same belongs in equity and good conscience to the plaintiff.

We are aware that a somewhat different view from the one here expressed was taken of a similar clause by the U. S. Dist. Court for the Northern District of New York. While that decision is entitled to great respect, and the reasoning of the learned judge is not without force, we think the construction adopted by the New York Court of Appeals is more in consonance with sound reason, and is better calculated to subserve the ends of justice.

Various other questions were raised by the assignment of errors which, in the view we have taken of the case, it becomes unnecessary to consider.

The judgment of the court below must be reversed, and the cause be remanded for a new trial.

Reversed and remanded.