BENJAMIN B. KNIGHT & ROBERT KNIGHT, Copartners, *vs.* THE PROVIDENCE & WORCESTER RAILROAD COMPANY.

The P. & W. Railroad Company received certain lots of cotton shipped from Louisiana to Providence, paid the freight charges on them, forwarded and delivered the cotton to the consignees. On delivery the cotton was found to be badly damaged by water, and the consignees claimed the right to recoup the damage from the bill of freight and charges of the P. & W. R. R. Co.

It appeared that the P. & W. R. R. Co. was not associated with the preceding carriers, and it did not appear where on the lines of transit the damage occurred.

*Held*, that the recoupment could not be allowed.

A carrier receiving goods marked for delivery beyond the end of his line is, in the absence of a special agreement, only responsible for safe carriage over his line and safe delivery to the next carrier.

When several independent carriers successively receive goods for carriage, each is entitled to demand payment in advance or to a lien on the goods for the carriage price.

In such cases each road is by mercantile custom entitled to pay the back charges, and to a lien on the goods for such charges and for its own carriage price.

If goods received from a prior carrier are apparently in good order, a carrier is not obliged

to open the packages for further examination, but has, for the back charges paid, a lien on the goods.

After some parcels had been delivered to the consignees by the P. & W. R. R. Co. and found damaged, they directed the Co. to receive no more parcels of the lot.

*Held*, that after such direction the company had no authority to receive the other parcels, or to pay any back freight upon them.

ASSUMPSIT.   Heard by the court, jury trial being waived.

*February* 4, 1882.   POTTER, J.   This is an action to recover back certain money paid to the Providence and Worcester Railroad Company for freight and back charges on cotton, or rather to recoup damages which the plaintiffs claim amounted to more than the freight.

The cotton was sent December, 1880, and January, 1881, from Shreveport, Louisiana, by the Waxahachie Tap Railroad Company and its connecting lines to the plaintiffs at Providence, R. I., and the bill of lading so expresses.   The bill of lading also contains conditions in print that the liability of that railroad company shall cease upon delivery to its next connecting line, and that that railroad company and its connections shall not be responsible for any old or concealed damage, &c., &c., which conditions the shipper assents to.

When it was received by the owners at Providence, it was found to be wet, and, as the plaintiffs claim, badly damaged. The cotton had come through without change of cars.   On two of the way-bills, but relating to the same lot, is an entry that the cotton is very wet and appears to have been in water.   Beyond that there is no evidence as to how or where the injury occurred.

One lot of cotton having arrived wet and damaged, the plaintiffs notified the Worcester Railroad Company by letter that they should not receive any more.

It is testified on the part of the defendants, and there is no evidence to the contrary, that the defendants have no connection with any other railroad, and have agreed to no *pro rata* rates, but fix their own rates independently of any other road.

It is claimed, as we understand, on the part of the plaintiffs, that as the first carrier received the cotton to be delivered at Providence, R. I., no freight was due until it arrived in Providence; and therefore if the Providence and Worcester Railroad

Company paid any back freight on receiving it, it was in their own wrong and they must bear the consequences.

Upon the question whether the fact of a carrier taking a parcel marked to a place beyond his own line amounts to a contract to be responsible for its safe delivery at its destination, there has been quite a conflict of authority. The true rule seems to be that when a carrier receives goods marked to a place beyond the terminus of his own line, without more, or without any further or special contract, he is only liable to carry safely to the end of his own route and deliver to the next carrier on the usual route. *Insurance Company* v. *Railroad Company*, 14 Otto, 146 ; also see cases stated in Lawson on Contracts of Carriers, § 238 : *Schneider* v. *Evans*, 25 Wis. 241, 256 ; *Root* v. *The Great Western R. R. Co.* 45 N. Y. 524 ; *Illinois Central R. R. Co.* v. *Frankenberg*, 54 Ill. 88 ; *Nashua Lock Co.* v. *Worcester & Nashua R. R. Co.* 48 N. H. 339 ; *Gray* v. *Jackson & Co.* 51 N. H. 1. But although if a carrier had made such a contract and to carry for a guaranteed rate, or guarantee that the whole freight should not exceed a specified rate or sum, he might himself be sued upon it, he could bind no other road ; and each road, unless there was some agreement or partnership, could charge its own rates. *Schneider* v. *Evans*, 25 Wis. 241 ; *Wells* v. *Thomas*, 27 Mo. 17.

If there was an association of carriers between two points, by which the carrier at one end was authorized to contract for and bind all the others on the route, then the rule might apply that if pay for the whole route was not taken in advance, no freight could be due until it arrived safely at the end of the voyage. See *Harp* v. *The Grand Era*, 1 Woods, 184.

But unless bound by some such agreement, every road has the right to demand pay in advance ; and if not in advance, to retain a lien for it. Each road would have a right to its own freight, and would not be bound by any agreement made at Waxahachie, not even if the Waxahachie Tap Railroad Company had received the whole pay in advance.

As on such a line of roads, unconnected by any agreement, the owner would be obliged to have some one at the end of each road to pay the freight for him, or otherwise have his goods detained under the lien, it has become the usage, founded on general con-

venience and necessity, for the next road to pay the back freight, and it is considered as the agent of the owner for that purpose, and the owner is supposed to know this usage. *Schneider* v. *Evans,* above cited; *Bissell* v. *Price,* 16 Ill. 408; *Bowman* v. *Hilton,* 11 Ohio, 303; *Lee* v. *Salter,* Lalor Supplement to Hill & Denio, 163; *Elmore* v. *The Naugatuck R. R. Co.* 23 Conn. 457, 482.

It is indeed laid down in Angell on Carriers, § 282, that a common carrier " is not entitled to freight until the contract for a complete delivery is performed," and this is continued in the last Boston edition, the 5th, A. D. 1877. This, if not taken in connection with §§ 124 and 356, might mislead. Even a general ship, *i. e.* one which advertises for a particular voyage only and to take for that voyage the goods of any one who sends, could not be obliged to carry without prepayment if demanded. But when without prepayment they take goods on freight, the general law of obligations would require the performance of the contract on their part, at least so far as they could perform it, before they could claim compensation. When they offer to carry goods for all between certain termini on a certain route at more or less regular periods, they then become common carriers; and the right of common carriers whether by ship, railroad, or other conveyance, to demand payment in advance, is well settled.

The apparent contradiction may be explained in part by the fact that payment in advance was not in old times denominated freight, nor was the word used for land carriage as it now is. Freight was the reward or compensation for safe conveyance and delivery by ship, and was not earned until that was performed. It had certain incidents attached to it which did not attach to payments made in advance. Abbott on Shipping, *405, *406, 5th Amer. ed. by Perkins, 491, 494; Maclachlan on Shipping, 433, 421, 364; Maule & Pollock on Shipping, 238; 1 Parsons on Shipping, 210, 246, 248, n. 2.

Were the defendants in the present case justified in paying the back freight? Ordinarily and without notice, and exercising a prudent care as to the condition of the goods, we have no doubt they were. The usage is too well settled and has become a part of the common commercial law, and they have the same lien for

it which they have for their own. Each carrier who pays the back freight becomes the agent of his predecessors to collect it. He is in a manner substituted or subrogated in the place of the previous ones; and in some cases may recover for back freight he has paid when he cannot recover for his own. *Western Transportation Company* v. *Hoyt*, 69 N. Y. 230.

Or it may be said that the shipper makes the succeeding carriers his agents for forwarding in the customary manner. But the rule holds not only in cases where an agency can be implied, but in cases where it cannot. And it is perhaps better to say that the right to forward and the claims for repayment of all reasonable back charges grow out of the necessity of the case. Between widely separate parts of this extended country, the shipper is presumed to know that his goods must be carried by successive lines, and to submit himself to the ordinary course of business, unless he gives special directions to the contrary. *Schneider* v. *Evans*, 25 Wis. 241, 265; *Mallory* v. *Burrett*, 1 E. D. Smith, 234; *Bissell* v. *Price*, 16 Ill. 408, 413.

How far were the defendants bound to examine the condition of the cotton when they received it? It is very evident that to require them to open packages by through cars, except in cases where there is good reason for it, would interfere with the whole commerce of the country. The owner who sends in through cars is benefited by the reduction in price he obtains in consequence of it and by a speedier carriage of his goods.

The sound rule, as we think, is laid down in *Bissell* v. *Price*, 16 Ill. 408, and in *Bowman* v. *Hilton*, 11 Ohio, 303. The duty of the carrier is to do what a prudent man would have done in the case. If the goods are in apparent good order he is not obliged to examine further, and has a right to pay the back freight.

One of the cases to which we are referred by the defendants recognizes this rule, viz.: *Monteith* v. *Kirkpatrick*, 3 Blatch. C. C. 279. Flour was shipped from Oswego to New York, via Albany. At Albany it was transferred to another line of carriers, who received it in apparently good order, and paid the back freight. On arriving at New York it was found to be damaged by wetting, and that the damage occurred before reaching Albany. The libel-

lants claimed their freight and back charges, and the respondents claimed to have the damage deducted, and also contended that the back charges could not be recovered.   Judge Nelson held that by established usage they were entitled to the back charges, and that the right to recover them stood on the same ground as the right to recover their own freight.   In this case the last carrier was not in fault, and had received the flour in apparently good order.

And to apply these considerations to the present case, we are not satisfied as to the cotton which was first delivered to the Providence and Worcester Railroad Company, that there was anything in its condition which should lead them to believe that there was much or serious damage, and we think they might reasonably suppose they were doing their duty to the owner in forwarding it to him as speedily as possible.

If the damaged cotton is worth more than the freight, and the owners cannot discover where the injury was done, it was probably a benefit to the owners to have their cotton brought to Providence.   If it had been left at Worcester, then, instead of carrying on a lawsuit comfortably here at their own homes, they would have been obliged to go to Worcester to replevy it, and have a lawsuit in the courts of Massachusetts.

But after notice given not to receive the goods, the Worcester Railroad Company had no authority to receive them and pay back freight.   No person has any right to meddle with the property of another against his express directions, even if apparently for his benefit.   If he does so, he does it at his own risk, and a court or jury must decide between the parties.   And we make the decision upon that ground alone.

*Benjamin N. Lapham*, for plaintiffs.

*Edwin Metcalf*, for defendant.


Subsequently, this case was again brought before the court, to determine what cotton was received by the defendant after the notice alluded to in the last paragraph of the foregoing opinion.

*July* 12, 1882.   CARPENTER, J.   This case has been heard for assessment of damages, and the plaintiffs claim that they are entitled to repayment of money paid for freight on certain cotton which was received and forwarded by the defendant after notice

had been given them not to receive the goods. In support .of this claim they prove that a letter was delivered to the defendants in the following terms: " We are informed that some of our cotton has arrived here and is at your depot also at Woonsocket for our Clinton Mills in a damaged condition. This is to notify you that we shall decline to receive the cotton so damaged and pay charges on the same until we are assured by you that your road will make good to us the amount of the damage. Your immediate attention is requested to this matter, as the condition of the cotton should be examined into at once." We are of opinion that this letter is not such a notice as the plaintiffs were understood at the former hearing to claim had been given, and which was referred to in the last paragraph of the opinion. Judgment will, therefore, be for the defendant for costs.         *Judgment for the defendant.*