ROBERTSON v. NATIONAL S. S. Co., Limited.

*(Superior Court of New York City, Jury Term.* April, 1891.)

1. ACTIONS AGAINST FOREIGN CORPORATIONS—CONFLICT OF LAWS.

Under a bill of lading issued in a foreign country for goods to be transported therefrom to New York, an action for damages to the goods in course of transportation is upon a cause of action arising in New York, within Code Civil Proc. N. Y. § 1780, subd. 3, authorizing an action against a foreign corporation to be maintained by a non-resident, "where the cause of action arose within the state."

2. ACTION BY CONSIGNEE—PARTY IN INTEREST.

An indorsee of a bill of lading, to whom the merchandise is consigned for sale, may maintain an action for damages to the goods while in course of transportation, under Code Civil Proc. N. Y. § 449, authorizing "a trustee of an express trust" to sue without joining the person for whose benefit the action is prosecuted.

3. CARRIERS OF GOODS—BREACH OF CONTRACT.

Defendant, a common carrier, by its bill of lading acknowledging receipt of a quantity of goat skins in good order, agreed to forward them from Havre, France, by a certain steamer to London, to be there transshipped upon another steamer named to New York. Defendant shipped the goods from Havre to Southampton, and thence by rail to London. *Held,* that this was a deviation from the terms of the contract, which made defendant liable as insurer for damages to the skins from their becoming wet and slimy before arrival at London, although the cause thereof did not appear; and that the express terms of the contract could not be varied by any usage among shipping men as to routes.

Action by Julius Robertson against the National Steam-Ship Company, Limited. On June 8, 1889, F. F. Munster delivered to the defendant, at Havre, France, 45 bales of goat skins, to be transported to New York city. The defendant, as a common carrier, thereupon issued its bill of lading to Munster, acknowledging the receipt of the merchandise in good order and well conditioned, and by it agreed to forward the same by the steamer Wolf to London, to be there transshipped in and upon the steamer Canada to New York, to be there delivered to said Munster or his assigns. Munster indorsed and delivered the bill of lading to the plaintiff, and consigned the merchandise to him for sale. The defendant, in violation of its contract, shipped the goods from Havre to Southampton, and from thence by rail to London. When the skins arrived at London they were wet and slimy, and when delivered at New York were in a damaged condition. The action is to recover the difference between the goods in their damaged state and their value if they had been delivered in suitable order.

*L. Sanders,* for plaintiff. *John Chetwood,* for defendant.

McADAM, J., *(after stating the facts as above.)* The cause of action arose within the state of New York, the place fixed for performance of the contract, (*Burckle* v. *Eckhart,* 3 N. Y. 132, approved in *Hiller* v. *Railroad Co.,* 70 N. Y. 225; *Bank* v. *Lacombe,* 84 N. Y. 378; Story, Confl. Laws, § 280; Hil. Confl. Laws, § 401;) and this circumstance confers jurisdiction, though the plaintiff resides in New Jersey and the defendant is a foreign corporation, (Code, § 1780; *Flynn* v. *Railroad Co.,* N. Y. Law J., March 23, 1891.) The plaintiff, as transferee of the bill of lading, factor and trustee of an express trust, may maintain the action. Code, § 449; *Ladd* v. *Arkell,* 37 N. Y. Super. Ct. 35; *Gorum* v. *Carey,* 1 Abb. Pr. 285. The shipment consisted of goat skins, part of which were flint dried and the remainder dried by salt. They were in bales, protected by canvas covering, and were received by the defendant at Havre, according to the language of the bill of lading, "in good order and well conditioned." This admission must be considered as referring to the exterior and apparent condition, and to the internal only so far as may be inferred from external appearances. *Gowdy* v. *Lyon,* 9 B. Mon. 112. The salty skins are apt to absorb moisture and become sweaty. The moisture generates from the center and spreads through the bales, and, if skins become moist and sweaty, they eventually decompose, go to pieces, or rot. The

shipment was made June 8, 1889, and the skins arrived in London several days afterwards, and at that time several of the bales were wet and slimy, a condition they could scarcely reach at so short an interval after shipment, if properly cared for. The skins were put upon the defendant's steamer Canada, arrived in New York July 2d, and were discharged on the 8th. The humidity at this time was unusually high, and the defendant claims that whatever damage accrued arose from inherent vice in the thing carried. No negligence was proved other than that which may be inferred from the facts stated, and the defendant affirmatively established that from the time the goods were received upon the Canada at London every reasonable care was taken of them. The defendant is a common carrier, running what is known as the "National Line" of steamers, and the bill of lading was a through bill from Havre to New York. The defendant, as carrier, is responsible for every injury sustained by the goods, occasioned by any means whatever, except only the act of God, the king's enemies, perils of the seas, or causes specially exempted by the bill of lading; subject, however, to the further qualification that it is not liable for damage arising from evaporation, ordinary leakage, natural deterioration or inherent vice of the thing carried. Ang. Carr. § 211; *Warden* v. *Greer*, 6 Watts, 424; *Blower* v. *Railroad Co.*, L. R. 7 C. P. 655; *Nelson* v. *Woodruff*, 1 Black, 156; Story, Bailm. § 492, a. The bill of lading expressly provides that the carrier shall not be liable for damage resulting from "sweating, inherent deterioration, rain, spray, or perils of the sea." Upon the evidence, it is clear the defendant is not liable, unless it be for deviating from the terms of the contract, in shipping the goods to Southampton, and sending them from thence by rail to London, instead of forwarding them by the steamer Wolf direct to London, as provided by the bill of lading. If it was clear that the damage to the skins resulted from their own inherent characteristics, and that deviation had nothing whatever to do with their subsequently impaired condition, the deviation might be regarded as of no consequence; but it is impossible to hold that the deviation may not have led to the wet and slimy condition of the skins which was discovered when they arrived at London. It is not for the court to determine whether the usual and customary route, or one prescribed by the consignor, is best suited to attain safety and dispatch. The consignor may select his own mode of conveyance, and has the right to require that the contract be fulfilled in the manner agreed. *Dunseth* v. *Wade*, 2 Scam. 285. If it is not so fulfilled, the carrier takes all the chances and assumes all the risks, and this is precisely the position in which the defendant placed itself by the deviation aforesaid. How or from what cause the skins became wet and slimy, as discovered at London, does not appear. Whether they would have fared better if they had been forwarded by the Wolf direct to London is left to conjecture. The risk of this cannot be put upon the plaintiff, for the defendant took the chances, and must now bear the loss. The contract was to carry the skins to London by the Wolf. This meant direct to London by water, and without charges. If that was possible, and it was, the consignor was entitled to have his goods forwarded as he directed, and the failure of the defendant to perform its contract in this regard made it an insurer, and responsible for the loss. Hutch. Carr. § 314. The rule is that, if a carrier attempt to perform his contract in a manner different from his undertaking, he becomes an insurer for the absolute delivery of the goods, and cannot avail himself of any exceptions made in his behalf in the contract. Lawson, Cont. p. 182; *Maghee* v. *Railroad, etc., Co.*, 45 N. Y. 514. The defendant, by its breach of contract, became a wrong-doer, and having, as a consequence, assumed the liability of an insurer, must make good the damage done. It is immaterial what the usage is among shipping men as to routes, as it cannot change the express terms of a contract, which may have been inserted for the very purpose of avoiding the usage which might have otherwise controlled. The defend-

ant had the right to bind itself by contract to carry goods from or to a point beyond the terminus of its own line. *Maghee* v. *Railroad, etc., Co.,* 45 N. Y. 518. The contract for through carriage is an entirety. Lawson, Cont. § 142. The bill of lading acknowledged that the skins were in good order when received, and this is *prima facie* evidence of the fact, sufficient to call upon the defendant to explain why they were wet and slimy when they arrived at London, (*Nelson* v. *Woodruff,* 1 Black, 156;) and the explanation has not been satisfactorily given. The steamer Wolf belonged to the London & Southwestern Railroad Company, and ran in connection with it from Southampton to Havre and return. There is no satisfactory evidence showing that the consignor knew this, or that the shipment to London was via Southampton, so as to have the bill of lading construed with reference to such knowledge and all it implied. The General Steam Navigation Company ran steamers from Havre to London direct, and the inference is that the consignor believed his goods were to take that course. Sending the goods to Southampton by water, and from thence to London by rail, and to the steamer by barge, involved extra handling of the skins,—a thing not calculated to do them any good. Upon the entire proofs, the plaintiff is entitled to recover. The experts have given their opinion as to the amount of damages, but the legal measure now judicially assessed is placed at $1,000, for which sum the plaintiff is entitled to judgment.