ROBERTSON *v.* NATIONAL S. S. CO., Limited.

*(Superior Court of New York City, General Term.  January 11, 1892.)*

1. CARRIERS OF GOODS—BREACH OF CONTRACT—LIABILITY AS INSURER.

    A common carrier, having contracted to carry goods from Havre, France, by a certain steamer, to London, forwarded them to Southampton, and thence by rail to London. *Held*, that by such deviation the carrier became an insurer, and could not invoke the benefit of any exceptions made in its behalf in the contract.

2. SAME—DAMAGES.

    In such a case, the measure of damages for injury to the goods is their value at the place of destination, at the time they should have been delivered pursuant to the contract, and in the condition the carrier undertook to deliver them, less the price to be paid for his services; but, where the injury to the goods is lessened by the action of the plaintiff, the carrier should only be charged with actual loss, and plaintiff should be allowed for expenses incurred in so doing.

Cross-appeals from special term.

Action by Julius Robertson against the National Steam-Ship Company, Limited, for injuries to goods while in course of transportation by defendant. Judgment for plaintiff. Both parties appeal. Reversed. For former report, see 14 N. Y. Supp. 313.

Argued before FREEDMAN and GILDERSLEEVE, JJ.

*Lewis Sanders*, for plaintiff.  *John Chetwood*, for defendant.

FREEDMAN, J. This action was, by consent, tried at special term without a jury. The controversy between the parties arose out of a shipment of skins which the defendant undertook to transport by the steamer Wolf from Havre to London, and by the steam-ship Canada from London to New York. The court, upon the facts found, gave judgment in plaintiff's favor for $1,000, and from this both parties appealed. The facts as found, with the single exception of the amount of the damages, are sufficiently supported by the evidence; and the questions relating to the jurisdiction of this court, the right of the plaintiff to maintain the action, the construction of the bill of lading, the duty of the defendant under said bill of lading, the deviation and breach of duty by the defendant, and the liability of the defendant in consequence thereof, were so fully discussed by the trial judge in the learned opinion rendered by him (14 N. Y. Supp. 313) that no further elab-

oration is necessary here. I entirely agree with the views expressed and the conclusions reached upon these questions. In determining the amount of damages, however, the learned judge erred. But the error, as will be presently shown, was in favor of the defendant, and against the plaintiff. Defendant's exception to the exclusion of evidence presents no ground for reversal. Upon defendant's appeal, therefore, the judgment should be affirmed.

The appeal by the plaintiff is upon the sole ground that the damages awarded are inadequate. The claim of the plaintiff is for damages by reason of the delivery to him of the goods in a damaged condition. The cause of the damage was found in defendant's deviation from the terms of the contract in carrying the goods to Southampton, and forwarding them from there by rail to London, instead of carrying them by the steamer Wolf directly to London, as provided by the bill of lading. The defendant, therefore, became an insurer, and cannot invoke the benefit of any exception made in its behalf in the contract. *Maghee* v. *Railroad Co.*, 45 N. Y. 514. In such a case the damages, as a general rule, are to be measured according to the value of the goods at the place of destination, at the time they should have been delivered pursuant to the contract, and in the condition the carrier undertook to deliver them, less the price to be paid for his services. *Sturgess* v. *Bissell*, 46 N. Y. 462; *Ward* v. *Railroad Co.*, 47 N. Y. 29; *Harris* v. *Railroad Co.*, 36 N. Y. Super. Ct. 373, affirmed 58 N. Y. 660; *Sherman* v. *Railroad Co.*, 64 N. Y. 254. The defendant offered no testimony whatever as to the value of the goods or the amount of damage thereto, while the plaintiff's witnesses all united in testifying that, at the time the skins were received in New York, their market value, if sound, was $7.50 per dozen; that there were 4,856 damaged skins; and that the damage to them was about 50 per cent. of the market value of sound skins. At that rate, the total amount of damage was $1,517.50. It appeared, however, that the plaintiff, before charging the defendant with the actual amount of the loss, undertook to lessen the damage by spending some labor upon the damaged skins to make them more merchantable, and to prevent further decay; and that as the result he was able to sell them, and did sell them, at a figure which made the amount of actual loss several hundred dollars less than $1,517.50, and several hundred dollars higher than the sum of $1,000, actually awarded. Under the special circumstances of this case, I think the defendant should not be charged with more than the actual loss, while, on the other hand, the plaintiff must be allowed the expenses incurred for reducing the loss below the amount which, under ordinary circumstances, the general rule would fix. The precise figures do not appear to have been given, but, from the general statements that were made, it sufficiently appears that the actual loss considerably exceeded the sum of $1,000, which was awarded. Upon plaintiff's appeal, therefore, a new trial should be ordered. The judgment should be reversed, and a new trial ordered, with costs to the plaintiff to abide the event.