J. J. ARMSTRONG, Respondent, v. CHICAGO, ST. PAUL & KANSAS CITY RAILWAY COMPANY, Appellant.

62 639
76 475

Kansas City Court of Appeals May 20, 1895.

1. **Common Carriers:** AGENCY: PAYMENT OF CHARGES. Every carrier through whose hands goods are shipped becomes the agent of the owner to advance previous charges and collect them, but must in such matters always act with good faith and watch the interest of the owner.

2. ———: ———: ———. Where, under an arrangement between the shipper and an elevator, the carrier leaves wheat with the elevator to be cleaned and then carries the same on to its destination, it may pay the elevator charges and collect the same from the consignee, unless it knows as a fact that the services charged for had not been performed.

3. ———: ———: ———: ACTION. If the elevator charges were fraudulent and extorsive and the defendant ignorant thereof, the remedy of the shipper for the wrong is against the elevator and not the carrier.

4. ———: ———: ———: ———. Where the carrier under such arrangement stops its cars for the elevator to clean the wheat, it has a right, when the wheat is turned back to it, to assume the service had been performed and to pay the charge.

5. **Trial Practice:** INSTRUCTION REFERRING TO OTHER INSTRUCTION. An instruction referring to another instruction which the record fails to show was given, is condemned.

6. .Carriers: BILL OF LADING: INSTRUCTION. An instruction is con-
demned because it requires the jury to determine the legal effect of
the bill of lading, and because of its want of clearness in submitting
to the jury a fact admitted by the evidence.

7. Evidence: AGENCY. A witness's agency is *held* to be sufficiently
shown to make his declarations admissible.

*Appeal from the Jackson Circuit Court.*—HON. E. L.
SCARRITT, Judge.

REVERSED.

*James Black* and *Pratt, Ferry & Hagerman* for
appellant.

(1)  Verdict should have been directed for defend-
ant.  The case is just as if a connecting carrier advances
illegal charges to the first carrier.  The shipper pays
and his remedy is against the company making the
wrong charge.  *Streeter v. Railroad*, 40 Wis. 294, 298;
*Knight v. Railroad*, 9 Am. and Eng. R. R. Cas., 90;
*Owen v. Railroad*, 83 Mo. 454; *Kilmer v. Railroad*, 100
N. Y. 395; *Kenneth v. Railroad*, 15 S. Car. Law, 284.
Neither at common law nor under the statute was there
any liability.  (2) ·Instruction number 1 erroneously
submits to the jury whether the written contract did not
fix the charge at fourteen cents per hundred, whereas
the meaning of this contract was for the court, and the
freight was to include [advanced charges.  It erro-
neously submits the question whether plaintiff ordered
the wheat cleaned when the undisputed fact is that the
order was given.  (3)  Instruction number 2 is erro-
neous in that it required the car to be actually cleaned
before a recovery could have been had for defendant.
(4)  The court permitted the witness Callahan to tes-
tify to admissions of a subordinate agent.  This was
error.  *O'Bryan v. Kinney*, 74 Mo. 125; *McDermott v.
Railroad*, 73 Mo. 516.

*Henry J. Latshaw, Jr.*, for respondent.

(1) Verdict should not have been directed for defendant. Both parties to this action should be bound by their written contract. No evidence tending to vary or contradict its terms was admissible. *Long v. Railroad*, 50 N. Y. (5 Sickels) 76; *Bostwick v. Railroad*, 55 Barbour, 137; *Bissell v. Price*, 16 Ill. 415; 3 Kent, 207; 2 Rorer on Railroads [Ed. of 1884], p. 130; That contract fixes the rate at fourteen cents per hundred pounds. The true rule of connecting carriers is laid down as follows in *Bissell v. Price*, 16 Ill. 413; *North v. Sellick*, 52 Ill. 254. (2) The court did not err in giving instruction number 1. The instruction read by any jury would mean that "if neither plaintiff nor his agents ordered the cars stopped," etc. But if error was committed in said instruction, such error was not prejudicial to appellant. (3) The court did not err in giving instruction number 2. The elevator company was not the agent of plaintiff for the purpose of stopping plaintiff's wheat; it had no power to do so. Orders were given by respondent to appellant and said orders pinned to bills of lading when wheat was to be stopped at Woodruff. Such cars as appellant stopped there were supposed to be cleaned by Beall. It is not erroneous in that it required the car to be actually cleaned before a recovery could have been had from defendant. (4) It was not error to permit witness Callahan to testify to admission of defendant's agents. *Lumber Co. v. Kreeger*, 52 Mo. App. 422; *Hampton v. Pullman P. C. Co.*, 42 Mo. App. 135. But, even though the court did commit error, the judgment is so clearly for the right party that this court will not disturb the judgment. R. S. 1889, p. 2303. *Wilkinson v. Ins. Co.*, 54 Mo. App. 665; *Henry v. Railroad*, 113 Mo. 538; *Goodwin v. Railroad*, 53 Mo. App. 10.

SMITH, P. J.—The plaintiff was engaged in buying and shipping wheat to Chicago. He entered into agreement with the Maple Leaf Elevator Company to handle his wheat in transit through it. By the term "handle," it was understood that the elevator company was to clean, mix and load the wheat into the cars, for a stipulated charge. Under this agreement many car loads were handled by the elevator company. The manner in which the business was conducted was, that the plaintiff would order the defendant to stop his cars of wheat at the elevator, and when ready to forward, he would bill them out, and the elevator company would turn them back to the defendant. Under this arrangement, car number 40918 was stopped and the wheat therein was transferred to that numbered 14250. This latter car was billed out by plaintiff and turned back to the defendant by the elevator company, with its charge of $4 thereon. The evidence of defendant discloses the fact that the elevator company would not deliver this car unless the defendant would pay its charge, which the defendant either did then pay, or obligated itself so to do.

It appears that when the car reached Chicago, the plaintiff met it there and, on examination, reached the conclusion that the wheat therein had not been cleaned by the elevator company. The manager of the elevator, on the other hand, testified that it was cleaned. The plaintiff adduced evidence tending to show that, after the car was billed out, the elevator company presented to him a bill for $3.53 for its services in cleaning the wheat; which he refused to pay, for the reason that the wheat had not been cleaned. His evidence tended to further show that it was after this that the defendant added this charge to its freight charges and collected both of the plaintiff's consignee, at Chicago.

It does not appear that the defendant either knew the wheat had not been cleaned, if it had not, or that the plaintiff had refused to pay the charge of the elevator company. The testimony was conflicting as to whether the elevator company looked to plaintiff for the charge on the car, or whether it required the defendant to pay the same before it would turn over the car as directed.

This is an action to recover of defendant the $4 elevator charge collected by it of plaintiff's agent. There was a trial in the circuit court, where plaintiff had judgment, and defendant appealed.

It is the well settled law that every carrier through whose hands goods are shipped, becomes the agent of the owner, and has implied authority from him, as such agent, to advance previous charges upon them and collect them again from the next carrier or warehouseman into whose hands he delivers them. While this is so, the carrier is bound to act in good faith toward, and to carefully watch the interest of the owner, whoever he may be. He is bound to do this to the same extent that a prudent man would, were he present acting for himself. He must see that the previous charges are reasonable, before he is authorized to pay them, for it is not every charge which every extortioner through whose hands goods pass *in transitu* may see fit to impose upon them that he is authorized to pay and thus fix upon the owner a certain liability. *Bissel v. Price*, 16 Ill. 408; *White v. Vann*, 6 Humph. 70; *Bowman v. Hilton*, 11 Ohio, 303.

If the plaintiff's wheat had been cleaned by the elevator company, it is not contended that the charge made therefor was extorsive or unreasonable. Under the arrangement between plaintiff and the elevator company, the defendant had been in the habit of delivering plaintiff's cars, loaded with wheat, to the

elevator company to be handled by it. These cars, when billed out by the plaintiff, had been from time to time turned back to the defendant by the elevator company. There had been no suggestion that the elevator company was not performing the service for which it charged. The defendant was not required by the measure of its duty to plaintiff, as common carrier, before receiving the loaded cars from the elevator company, to ascertain by inspection whether the contents thereof had been manipulated by the latter company, according to the directions of the plaintiff. It seems from the evidence that the elevator company, by direction of the plaintiff, sometimes would transfer the wheat in certain cars of "3 hard," and mix it with that in others, so as to make a "uniform grade" of "No. 3 hard wheat," or to make "strong 3 red." How could the defendant know anything about these matters? It had a right to presume that the wheat in the cars turned back to it by the elevator company had been manipulated according to the directions of the plaintiff. Unless the defendant knew, as a fact, that the service for which the elevator company made its charge, had not been performed, and that such charge was fraudulent, it was authorized to pay the same.

If the charge which defendant paid the elevator company was one which the latter had no right to make —if it was fraudulent and extorsive, and the defendant was ignorant of the fact, then the remedy of the plaintiff for the wrong is against the elevator company and not against the defendant. *Minter v. Railroad*, 40 Wis. 294.

The second instruction given by the court, on its own motion, was to the effect that before there could be a verdict for defendant, the jury must believe from the evidence that plaintiff directed the defendant to stop the car of wheat at the elevator to be cleaned, and

that it was accordingly so stopped and cleaned by the elevator company, before it was turned back to the defendant. We think this instruction was erroneous in theory. If the plaintiff, or anyone acting for him, directed defendant to stop the car in question at the elevator, to have the wheat it contained cleaned, and the defendant thereupon did stop it there, where it remained until it was turned back to the defendant on the order of the plaintiff, then the defendant had the right to assume the service, for which the elevator company made its charge, had been performed, and to pay such charge, if the same appeared to be fair and reasonable; and this, though the service for which the charge was made had not been actually performed at all, or, if so, in an indifferent manner.

The third instruction given by the court is erroneous for the reason that it tells the jury that if they find that defendant was directed to have the wheat cleaned, *as stated in defendant's first instruction*, etc., when there does not appear from the record that the defendant was given, or, indeed, that it asked, any instruction other than that in the nature of a demurrer to the evidence.

The first instruction given for the plaintiff at his request, told the jury that "if the plaintiff shipped the car of wheat in question over defendant's railroad, under the bill of lading in evidence, and that according to said bill of lading a charge of fourteen cents per one hundred pounds was agreed upon, and that thereafter defendant collected from plaintiff or his agents $4 in excess of said rate, and that plaintiff nor his agents empowered or instructed the defendant to stop the car of wheat in question and have it cleaned at Woodruff, and did not direct the elevator company to clean the wheat, etc., to find for plaintiff." The defendant objects that this instruction is erroneous, in that it

requires the jury to determine the legal effect of the bill of lading. This criticism is just. It was the duty of the court to advise the jury by its instructions, as to what the legal import of the bill of lading was. The instruction was, we think, erroneous in another respect. It is exceedingly clumsy and inartistic in structure. It is contended that by fair construction it must be held to have told the jury that defendant was liable even though plaintiff himself advised the elevator company to clean the wheat, for the reason that it directed the jury that, before the defendant could be authorized to pay the charge of the elevator company, they must find that defendant was authorized by the plaintiff to have the wheat cleaned. The rule intended to be declared by it is wanting in that clearness and perspicuity which should characterize an instruction. The plaintiff's own evidence indisputably shows that he authorized the elevator company to clean the wheat. This fact could have well been assumed by the instructions. There was no occasion to submit to the jury the finding of an undisputed fact, under an instruction of such doubtful import.

We discover no error in the action of the court in admitting the declarations of the witness Rogers. It seems to us that the evidence was ample to show his agency, and to make his declarations in respect to the subject-matter to which the same related, admissible. *Midland Lumber Co. v. Kreeger*, 52 Mo. App. 418.

It necessarily results that the judgment will be reversed, and, since we can discover no merit in the case, we will not remand it. All concur.