EVANS & HOLLINGER, Respondents, v. CHICAGO & ALTON RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, November 7, 1898.

1. Common Carriers: LIEN FOR FREIGHT CHARGES. A common carrier has not only the right to hold the goods and enforce a lien for its freight charges but has a like lien for all freight bills paid by it to previous connecting carriers from the initial point of shipment.

2. ———: ———: NEW BILLS OF LADING. When the shipment is clearly a through shipment the fact that new bills of lading may have been issued by one or more of the carriers or that a shipping clerk failed to note a lien on the bills but did note the charges, will not serve to discharge the lien.

*Appeal from the Jackson Circuit Court.*—HON. E. L. SCARRITT, Judge.

REVERSED AND REMANDED (*with directions*).

F. HOUSTON and CHAS. B. ADAMS for appellant.

The law is well settled that a common carrier is entitled to an implied lien on the goods carried for his own freight and for all advances made to previous carriers on a line of shipment, for freight earned

by them extending back to the initial point of ship-
ment. Armstrong v. Railroad, 62 Mo. App. 643;
Wells v. Thomas, 27 Mo. 17; s. c., 72 Am. Dec. 228
and note 243; Bissell v. Price, 16 Ill. 468; Edwards on
Bailments [2 Ed.], secs. 645–652; 3 Blackstone's Com.,
160; Lawson on Usages and Customs, p. 238; Angell
on Carriers [4 Ed.], sec. 356 (Duty and Lien); Steam-
boat v. Kraft, 25 Mo. 76; Express Co. v. Schier. 55 Ill.
140; Railroad v. Murray, 85 Ga. 343; Knight v. Railroad,
13 R. I. 572; s. c., 9 Am. and Eng. R. R. Cas. 90, and
43 Am. Dec. 46; 2 Rorer on Railroad, 1263; 8 Am.
and Eng. Ency. of Law, 971; Moore v. Henry, 18 Mo.
App. 35; Briggs v. Railroad, 6 Allen, 246; s. c., 83 Am.
Dec. 626, 627, 628, 629; Stevens v. Railroad, 8 Gray,
266; Whitney v. Rockford, 105 Mass. 267; R. S. 1889,
sec. 6806; White v. Vann, 44 Am. Dec. 294; Bissell v.
Price, *supra*; Knight v. Railroad, *supra*.

HAMNER, HARDIN & HAMNER for respondents.

"It is not every charge which every extortioner,
through whose hands goods pass in transit, may see
fit to impose upon them, that he is authorized to pay
and thus fix upon the owner a certain liability."
Armstrong v. Railway, 62 Mo. App. 643; Nanson v.
Jacob, 12 Mo. App. 125; Bissell v. Price, 16 Ill. 408;
White v. Vann, 6 Humph. 70; Bowman v. Hilton, 11
Ohio, 303; Steamboat v. Kraft, 25 Mo. 76.

GILL, J.—Plaintiffs, a commission firm at Kansas
City and dealers in fruits, etc., sued the defendant for
damages sustained by them by reason of defendant's
refusal to deliver a car load of grapes which had been
shipped from Vine Valley a point on Lake Canandaigua
in the state of New York to Kansas City.
STATEMENT.          Hallowell & Wise bought the grapes at
Vine Valley for shipment to Kansas City where they

were to be sold by their agent. Vine Valley is situated on Lake Canandaigua and about twelve miles from Lake Landing a point touched by the Northern Central Railway Company. The grapes were carried from Vine Valley to Lake Landing by the Canandaigua Lake Steamboat Company; there they were, by order of the shippers, taken by the Northern Central Railway Company and billed to Kansas City passing en route over several railroads the last being the Chicago & Alton, defendant in this suit. When the Northern Central took the grapes at Lake Landing it paid the carrying charges of the Steamboat Company ($16.32) which company, as already stated, had carried the fruit from Vine Valley. As instructed then by Hallowell & Wise, the Northern Central Railway Company loaded the grapes into a car and billed it through to Kansas City, Missouri—noting on the way bill, the $16.32 charges paid the steamboat first carrying the freight. The railroad company also issued a bill of lading to shippers' order and sent it to Hallowell & Wise at Penn Yan, New York, a point not far from Vine Valley and where said Hallowell & Wise resided. As already stated, the car of grapes passed on its way to Kansas City over several lines of road, each in turn paying all back charges including the $16.32 paid to the Canandaigua Lake Steamboat Company for transportation from the initial point at Vine Valley to Lake Landing.

The grapes arrived at Kansas City in due season and were purchased by the plaintiffs who took an assignment of the bill of lading from the agent of Hallowell & Wise, the original owners and shippers. Plaintiffs went to the yards of the defendant at Kansas City, offered to pay all freight charges except that of the steamboat company and demanded the car of grapes. But the defendant refused to deliver the fruit unless this (which as already stated amounted to $16.32) was also

paid. On this claim defendant detained the grapes for about a week when they were turned over to plaintiffs on the condition that if the charge of $16.32 was just the plaintiffs should pay it.

By this delay in delivery, the grapes were damaged to the extent of $220 as shown by the evidence, and for this plaintiffs sued. Defendant not only denied its liability, but set up as a counterclaim its right to a lien on the grapes for the charges it had advanced, to wit, the $16.32 paid to the steamboat company.

Plaintiffs recovered below and defendant appealed.

The sole question here is, whether or not the defendant was entitled to a lien on the grapes for the $16.32, the charges of the Canandaigua Lake Steamboat Company for carrying said fruit from Vine Valley to Lake Landing, and which was paid by each succeeding railway carrier including the defendant the last on the route. It is conceded that a common carrier has not only the right to hold the goods and enforce a lien for its own freight charges, but has a like lien for all freight bills paid by it to previous connecting carriers from the initial point of shipment. This is well settled law. It grew out of the necessities of trade and commerce, and is based on a theory of implied agency; that each succeeding carrier is authorized, by the necessities of the case and to facilitate the ready transportation of goods from one distant point to another, to pay the reasonable freight charges of the preceding carrier and to be subrogated to its right of lien. Edwards on Bailments [2 Ed.], sec. 652; 2 Rorer on R. R., p. 1263; White v. Vann, 6 Humph. (Tenn.) 70; Bissell v. Price, 16 Ill. 408; Armstrong v. Railway, 62 Mo. App. 639. So then it would seem clear that when the Northern Central Railway Company took this car load of grapes at Lake Landing and forwarded the same according to

*COMMON carriers: lien for freight charges.*

the shippers' order to Kansas City, it was authorized
to pay the freight charges of the Canandaigua Steam-
boat line (which had carried the goods from Vine Val-
ley to that point) and that said railway company and
succeeding carriers in like manner paying said charges,
ought to be entitled to a lien for the same. We can
see no escape from this conclusion.

Plaintiffs' counsel however contend that the ship-
ment *originated* at Lake Landing and not at Vine Val-
ley—that the former and not the latter
———:———: new bills place was the initial point of shipment.
of lading.
This is contended because of the fact, that
from Vine Valley to Lake Landing the grapes were
shipped in the name of Wise, one of the owners; that
when the fruit arrived at Lake Landing it was sent on
under a through bill of lading naming Hallowell &
Wise as consignors and Hallowell & Wise as consignees,
and because Wise testified that he *received* the grapes
at Lake Landing and directed the agent of his firm to
bill them via the Northern Central Railway, this de-
fendant and other roads to Kansas City.

We think this is hardly a fair and candid treat-
ment of the question. The evidence unquestionably
shows that this was a shipment all the way through by
the firm of Hallowell & Wise, and that the beginning
place of the route was Vine Valley. The grapes were
loaded on the steamer and started from Vine Valley to
be consigned to Kansas City. The testimony shows
that the Steamboat line did not issue through bills of
lading; that they simply carried the fruit twelve miles
over the lake to Lake Landing, where, according to the
direction of the shippers, they were taken possession of
by the Northern Central Railway Company and sent on
their way. It is true that Wise in his deposition uses
the word "received" when referring to the arrival of
the fruit at Lake Landing, but such receipt was clearly

nothing more than a direction to the railway company to take the fruit and transport it on the way to Kansas City. Wise nor Hallowell & Wise did nothing there to break the continuity of the route of shipment. Nor was there any such delivery of the goods as to indicate a relinquishment of a lien by the steamboat company. Neither was the line of shipment broken by the fact that another bill of lading was issued at Lake Landing. For that matter, each road over which the grapes were carried might well have issued a separate bill of lading without in any way destroying the lien for freight paid. Nor did defendant lose its lien for this steamboat freight bill (which it and the former carriers had paid) because of the failure of the agent at Lake Landing to note it on the bill of lading. This was the usual course adopted, but on this occasion the railway clerk neglected it. It was however placed among the charges on the way bill, or bill of charges, accompanying the freight.

On the undisputed facts of this case we think the judgment is for the wrong party. The defendant was clearly entitled to detain the grapes until the charges for freight on the Canandaigua Steamboat line were paid. Hence said defendant was not liable for the damages sued for. Besides this defendant has a just claim against plaintiffs for this freight.

The judgment then of the circuit court will be reversed and cause remanded with directions to enter a judgment for defendant on plaintiffs' complaint and to enter a further judgment for defendant and against the plaintiffs for $16.32 with six per cent interest from November 1, 1895. All concur.