## MERRICK et al. v. GORDON.

A firm, carriers upon the New York canals, agreed with a firm of carriers upon the Great Lakes for a division in fixed proportions of the total freight which should be received for the carriage of goods which having been carried over either of the routes should be earned over the other during the season of navigation: *Held*, that this did not constitute them partners as between themselves or in respect to third persons.

*Champion* v. *Bostwick* (11 *Wend.*, 571, and 18 *id.*, 175), considered and distinguished.

The Lake carriers having received goods transported by the canal carriers, paid the latter for the proportion of freight carried by them under the arrangement, and delivered the goods at the termination of their Lake route under a bill of lading subjecting them to the entire freight, are entitled to recover the whole, and the owner cannot recoup a claim against the canal carriers for damages to other goods.

APPEAL from the Supreme Court. The plaintiffs were carriers from Oswego to ports on the Upper Lakes. In October, 1851, certain goods of the defendant were transported from New York, by river and canals, directed to him at Cleveland, and consigned to the plaintiffs at Oswego, who forwarded them by schooner to the defendant at Cleveland, Ohio, and brought this action for the freight earned by themselves, as well as the charges paid by them for river and canal freight. On the trial at the Oswego Circuit before Mr. Justice ALLEN, a jury having been waived, the case proved was this: On the 10th of March, 1851, the plaintiffs entered a written contract with Van Dewater Brothers, carriers upon the Hudson river and canals, by which the parties agreed to divide freights *pro rata* with each other between New York, Albany or Troy and the Western Lakes during the navigation season of 1851: on down freights from Lake Erie ports to New York the lake freight to be three-eighths and the canal freight five-eighths. Upward freight for Lake Erie ports from New York, lake freight to be one-third and canal freight to be two-thirds of the contract price through. There were similar provisions for the division

in different proportions of freight between New York and the other eastern termini, and ports on Lake Michigan; and a provision that in case the rates of toll on the Erie canal should be varied from those of the preceding year, the advances or deductions should be divided in the same proportions as was agreed in respect to freight.

On the 18th of April, 1851, the defendant made a contract with Van Dewater Brothers, at New York, by which the latter undertook to transport all his goods from New York or Albany to Cleveland at certain specified prices until the 20th of October; all shipments after that date to be subject to an advance equal to that which should be made in the current rates for lake freights. The course of business between the Van Dewaters and the plaintiffs was for the latter to pay the captains of the canal boats of the former, upon their delivering goods, the charges for canal freight, or so much thereof as was required. The amount earned, according to the provisions of the contract between them, was credited by the parties respectively upon their receipt of goods from the boats or vessels of each other. The goods in question were shipped on the 20th of October; they arrived in Oswego upon seven different canal boats; the plaintiffs paid the canal freight and shipped them on the 6th of November upon a vessel bound for Cleveland, with a shipping bill by which the plaintiffs' agent at Cleveland was directed to collect all charges, to pay the captain and lake freight, and credit their account with the balance.

The defendant's clerk at Cleveland received the goods, promising to pay the charges; but before paying was directed by the defendant, who was then in New York, not to do so. The defendant had a claim against the Van Dewaters for damages to some of his goods (not those involved in this case), while in course of transportation by them on the Hudson river in the preceding month of September. This was his reason for not paying the charges in question, and he set up the claim by way of recoupment in this action.

The defendant moved for a nonsuit upon the ground that the Van Dewaters were proved to be partners with the plain-

tiffs, and should have joined as such in bringing the action. The motion was denied, and the defendant excepted. The same question and that of the defendant's right to recoup were raised by other exceptions. The judge ordered judgment for the plaintiffs, which having been affirmed at general term in the fifth district, the defendant appealed to this court.

*Timothy Jenkins*, for the appellant.

*Edward Allen*, for the respondent.

COMSTOCK, J. The contract entered into by the plaintiffs with the Messrs. Van Dewater did not constitute a partnership between those firms. The case of *Champion* v. *Bostwick* (11 *Wend.*, 571; *S. C. in error,* 18 *id.*, 175), is a strong one in the direction of holding certain arrangements of the same general nature to be partnerships. I do not question the soundness of that decision, but the case before us is distinguishable in a material and controlling circumstance. In *Bostwick* v. *Champion* all the fare from passengers received by any of the parties was to be a common fund and divided according to the number of miles in the section of the line which each occupied. This formed a union in the entire business of carrying which any and all of the partners conducted. Consequently, if the occupant of one of the sections should take a passenger over his own part of the route, who was carried no further, or should take one over a part of his section, the fare would go into the general fund and be subject to division. That this was the decisive feature in the case will be evident from an examination of the opinion of Chancellor WALWORTH in the Court for the Correction of Errors. In the present case the agreement between the alleged partners embraced only the freight on goods transported over the lines of both of them to and from certain points which were specified. With freights between New York and Oswego, when the goods were not to go beyond the latter place, or with intermediate freights on the canal line of Messrs. Van Dewater, the

plaintiffs had nothing to do; nor had the Van Dewaters anything to do with the lake freights earned by the plaintiffs when the goods were not to be carried upon the canals in their boats. The contract in this respect was simply that where either of the parties took goods from the other at Oswego, the termination of both lines—the goods being brought to that place by one or the other under freighting contracts—and carried them in one direction to New York, Albany or Troy by the canals and Hudson river, and in the other by the lakes to the port situated thereon, the gross earnings on those goods should be divided. Entire freights over both lines of conveyance were in contemplation, and those only; and the division was to be made according to the value of the service which it was supposed each party must perform in earning those freights. The arrangement was, therefore, in principle like the very common one which is made between different lines of railroad. Arrangements are often made between different companies having lines which connect, adjusting fare or freight on passengers and goods between distant points, and assigning to each a share in the gross earnings according to the service which each performs in producing the result. No case has gone the length of holding that an agreement of this nature creates a partnership; and if we were to lay down such a doctrine now, it would be establishing a class of partnerships hitherto unknown to the law. It follows from the views which have been stated, that non-joinder of the Messrs. Van Dewater with the plaintiffs was not a valid objection to the maintenance of the action.

The remaining question is, whether the action is subject to the recoupment which the defendant insisted upon at the trial. In determining that question it seems to be necessary in the first place to take into consideration the nature and cause of the suit. The Van Dewaters were carriers between New York and Oswego by canal boats. The plaintiffs owned lake vessels, and were carriers from Oswego to Cleveland, and other ports on the lakes. The two firms did business 'in a certain connection with each other, which has been considered already. The Van Dewaters agreed with the defendant to carry the

Merrick *v.* Gordon.

goods, on which the freights in question were due, from New York, through Oswego, to Cleveland. The agreement of course contemplated a transfer of the goods at Oswego, from the canal boats to vessels, to be carried forward to their destination. They were accordingly transhipped to a vessel chartered by the plaintiffs at Oswego; the plaintiffs paying or crediting to the Van Dewaters the freight to that place, or more properly speaking the proportion of the entire freight which the Van Dewaters had earned, adjusted according to the agreement between the two firms. The proportion thus earned and credited or paid became a part of the entire charge on the goods, which was due when the plaintiffs had carried them to the owner at Cleveland. Thus far it may be conceded there was no privity of contract between the plaintiffs and the defendants. If the defendant had refused to receive the goods and pay the freight, I think the plaintiffs could not have maintained this action. But by the terms of the bill of lading which the plaintiffs signed at Oswego, the goods arrived at their destination subject to the entire charges. The defendant accepted them under that bill of lading, and upon that acceptance the law raises an assumpsit to pay the freight to the carriers from whom they were received. (*Abbott on Shipping*, 421; *Bell* v. *Kymer*, 5 *Taunt.*, 477.) This then is the true cause of the action. The freight being entire for the whole distance between New York and Cleveland, was not due until the goods arrived there. It was then due to the plaintiffs because they were then the carriers having the goods at their destination subject to the charge. When the defendant received them he promised, in judgment of law if not in fact, to pay the amount of that charge, and on that promise the suit is founded.

Upon the facts as they were proved or assumed to be at the trial, the defendant had a valid cause of recoupment against the Van Dewaters, arising out of the loss of other goods previously shipped on their boats, to be carried from New York to Cleveland. The provisions of the Code of Procedure on the subject of "counter-claim" are undoubtedly broad enough

to embrace that demand (§ 150, *Code of* 1852); and if this action for freight were brought in the name and right of the Van Dewaters, the defence would prevail. But the action is brought in the name and right of the Merricks, and this circumstance presents a fatal objection to the introduction of such a defence. The Code in the section referred to declares that a counter-claim must "exist in favor of a defendant, and against a plaintiff, between whom a several judgment might be had in the action." The language is so precise as to leave no room for interpretation. Its effect I conclude is qualified by another section (112) which declares that "in the case of an as signment of a thing in action, the action by the assignee shall be without prejudice to any set-off or other defence existing at the time of or before notice of the assignment." But, as we have seen, the plaintiffs' right to sue for the bill of freight in question rests upon no assignment to them. Their claim is founded on the *pro rata* payment by them of charges at Oswego, the further transportation of the goods to Cleveland, the possession of them there subject to the entire freight, and the assumpsit of the defendant which arose on receiving them at that place. I do not see that the defendant had any concern or interest in the general business arrangement between the plaintiffs and the Messrs. Van Dewater. But whatever might otherwise be its influence upon the question of recoupment, I think the terms of the statute are decisive against the introduction of such a defence to the plaintiffs' claim. The judgment of the Supreme Court must be affirmed.

SELDEN, J., was absent; all the other judges concurring,

Judgment affirmed