76   453
97   676

# Guesnard *v.* Louisville & Nashville Railroad Co.

### *Detinue against Common Carrier, for Imported Goods.*

1. *Customs-duties on imported goods; where payable.*—Under the acts of Congress regulating the collection of duties on imported goods at the custom-house in New Orleans (and other specified ports), duties on goods intended for shipment to Mobile are properly collected at New Orleans, unless it "appears by the invoice, or bill of lading, and by the manifest," that the goods are "consigned to and destined for" the port of Mobile (Rev. Stat. U. S., §§ 2990, 2997); and where they are consigned to a person by name in New Orleans, the addition of the words "for transportation to Mobile," or "for transhipment to Mobile," does not relieve them from the payment of duties at New Orleans.

2. *Mercantile agency; custom or usage in business.*—When a mercantile agency is to be executed at a particular place, the principal is presumed, in the absence of special instructions to the contrary, to consent that his agent may execute it according to the general custom and usage relating to that particular kind of business; and it is immaterial whether the principal has actual knowledge of such custom or usage, or not.

3. *Lien on imported goods,in favor of government, and of common carrier.*—The United States has a specific lien on all imported goods, for the customs-duties on them; and these charges being paid by a common carrier, in the ordinary course of business, the lien is preserved in his favor.

4. *Presumption in favor of regularity of official acts; raising appraised value of imported goods.*—Public officers are presumed to do their duty; and in a controversy between the owner of imported goods and a common carrier who has advanced the duties on them, if the former can be heard to impeach the action of the custom-house officers in raising the appraised value of the goods and imposing a penalty for under-valuation, or impute negligence to the carrier for the failure to take an appeal from the decision, he must show that injury thereby resulted to him.

5. *Brokers; skill and diligence, and compensation.*—Brokers, in the discharge of their agency, are bound only to the exercise of reasonable skill and diligence; and so long as they are guilty of no bad faith, and exercise the same care and diligence that a prudent man would exercise in the management of his own like business, they are entitled to reasonable commissions for their services.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. WM. E. CLARKE.

This action for the recovery of personal property in specie was brought by Theodore Guesnard, against the Louisville & Nashville Railroad Company, and was commenced on the 27th March, 1882. The property sued for was described in the complaint as "two cases, containing two hundred and one-half dozen small boxes of guava jelly, and one case containing 6,000 cigars," which the plaintiff had imported from Havana, through

[Guesnard v. Louisville & Nashville Railroad Co.]

the port of New Orleans, and which were detained and held by the defendant, as a common carrier, for the costs and charges paid at the custom-house in New Orleans, and the cost of transportation by its railroad from New Orleans to Mobile. The entire amount for which the goods were held by the defendant was $403.15; of which amount, $10.30 was the freight by steamer and railroad, and $392.85 was the sum paid at the custom-house; and this amount ($392.85) consisted of the duties at the invoice prices ($304.40), penalties and extra charges for undervaluation, and fees paid to a broker in New Orleans for attending to the entrance and clearance of the goods at the custom-house. The defendant denied the correctness of these charges and fees, and claimed that he had the right to pay the import duties at Mobile; and having tendered $20 in gold, in payment of the freight, which was refused by the defendant, he brought this action to recover the goods. On all the evidence adduced, the court charged the jury to find for the defendant; to which charge the plaintiff excepted, and which he here assigns as error, together with the admission by the court, against his objections, of evidence showing that it was customary and usual, among importers in New Orleans, to employ brokers to attend to the entry and discharge of goods at the custom-house.

OVERALL & BESTOR, for appellant.—(1.) The goods were marked " T. G., Mobile," and were consigned to C. C. Marshall, at New Orleans, "for transportation to Mobile;" and the invoice expressly stated that they were bound for New Orleans, for account and risk of plaintiff at Mobile, "consigned to C. Marshall, agent of New Orleans and Mobile railroad, for transhipment to him." On these facts, the plaintiff had the right to pay the custom duties at Mobile, and Marshall had no authority to enter them at the custom-house in New Orleans as if they were intended for stoppage and consumption there.—Rev. Stat. U. S. §§ 2990–93. (2.) Marshall was the general agent of the defendant at New Orleans, and was only the special agent of the plaintiff, with power only to receive and forward the goods; and he had no authority to pay out any money, or to employ a broker. His authority was special and limited, and it could not be enlarged by any evidence of custom or usage. Lawson on Custom and Usage, 444; *Johnson v. Cunningham*, 1 Ala. 249; *Kimball v. Brawner*, 47 Mo. 398. His acts in having the goods entered "for immediate consumption," in employing the broker, in submitting to the action of the custom-house officials, and in failing to appeal from their action, as he might have done (U. S. Rev. Stat. § 2930), are not binding on plaintiff; and the fact that he may have acted in good faith,

does not change the principle of law.—1 Brick. Digest, 58, §§ 79, 82; *Travis v. Thompson*, 37 Barb. 236; *Homestead Co. v. Railroad*, 17 Wall. 163. (3.) The lien of a common carrier extends only to freight and warehouse charges, and does not cover customs or duties, which it has no authority to pay. Hutchinson on Carriers, § 478; 2 Wait's Actions and Defenses, 60; *Steamboat v. Kraft*, 25 Mo. 76; *Faith v. East India Co.*, 4 Barn. & Ald. 630; 37 Barb. 236.

GAYLORD B. CLARK, *contra.*—(1.) The facts did not authorize any other entry of the goods than that which was made at the custom-house in New Orleans; because it did not appear "by the invoice, or bill of lading, and by the manifest," that the goods were intended for immediate transhipment to Mobile."—Rev. Stat. U. S., § 2990. (2.) The action of the custom-house officers was in all respects regular, and justified by the facts; and even if it were irregular, it could not be impeached in this action. (2) In performing these duties, and paying these costs and charges, the defendant acted as the plaintiff's agent, and has a specific lien for its reimbursement. Overton on Liens, §§ 2, 4, 6, 14, 18, 41, 90, 103–05, 134, 230.

SOMERVILLE, J.—The action is one of detinue for certain articles of merchandise imported from Cuba to the port of New Orleans, and transported thence to Mobile by the defendant, in the capacity of a common carrier. The plaintiff, Guesnard, who was the owner of the goods, tendered to the carrier all dues for freight and storage, but declined to pay the custom-house duties, and other charges incurred in entering the goods at New Orleans, upon the ground that he had a right to settle these charges at Mobile, the port of destination, and the defendant had no authority to settle them for him at New Orleans, nor to advance the money without his special request.

The court charged the jury to find for the defendant, if they believed the evidence. The correctness of this charge, and the main question in the case, depends, in our judgment, upon the laws of the United States regulating the collection of import duties. These laws authorized two kinds of entries to be made at the New Orleans custom-house—the one being designated as an entry for "consumption," and the other an entry for "immediate transportation." Under the former, the duties were properly payable at New Orleans, as the port of entry; under the latter, they were payable at Mobile, as the port of destination.

It is provided by section 2990 of the Revised Statutes of the United States (1878), that, when merchandise, imported at several specified ports, including New Orleans, "shall appear by

*the invoice, or bill of lading, and by the manifest,* to be *consigned to and destined for* either of the ports specified in section 2997," among which is expressly named the port of Mobile, the collector at the port of arrival shall allow the said merchandise to be shipped immediately to the port of destination, upon complying with certain regulations.—See Supplement to U. S. Rev. Stat., vol. 1, p. 545; U. S. Rev. Stat. (1878), p. 566, §§ 2990, 2997.

It is plain that, under this statute, the duties could not be lawfully payable at Mobile, unless the manifest of the importing vessel showed that the goods were *consigned* to that port, and *destined for* it. And the same facts must *also* have appeared from the bill of lading, or else from the invoice. These are the absolute requirements of the statute, the importance of which is made more apparent, if possible, by the further declaration, that the *consignee* is deemed and held to be "the *owner*" of all such imported merchandise, so far as concerns his dealings with the government in the settlement of import duties under the revenue system.—Rev. Stat. U. S. § 3058.

The manifest of the ship not only fails to show that the goods were consigned to and destined for the port of Mobile, but shows that they were consigned to C. Marshall at New Orleans, and destined for that port. The invoice also names Marshall as the consignee, and the bill of lading indicates, in effect, the same thing. The *addendum*, in the invoice, of the phrase "for transportation to Mobile," and in the bill of lading, "for transhipment to Mobile," were not inconsistent with the theory that Marshall was the legal consignee of the goods, as they could be transhipped as well after the payment of custom-dues as before.

It is our opinion, that the duties were properly payable at the port of New Orleans, under the provisions of the statutes to which we have above referred. For this reason, if the plaintiff's instructions had been received in time, the goods would not have been relieved of liability for such duties at the port of entry. These instructions are shown to have been received by Marshall, moreover, after the goods were entered for consumption, and were, therefore, too late to prove available for any purpose.

It is shown to have been the custom of importers in New Orleans, to employ brokers to attend to the receipts of imported goods, and look after the payment of custom-duties on them, the employment being one requiring a suitable degree of skill and experience. Marshall was justified, in view of this custom, in employing such a broker, and in paying him the usual and reasonable fee for his services in this particular. Where a mercantile agency is to be executed at a particular place, the prin-

[Guesnard v. Louisville & Nashville Railroad Co.]

cipal, who employs the agent, is presumed to consent that he may execute it, in the absence of particular instructions, according to the general custom and usage relating to that kind of trade or business, whatever it may be. The law implies that he gives his assent for his agent to act as all other similar agents, who are honest and diligent, are accustomed to do. And it is immaterial, as a general rule, whether the principal is informed as to such customs and usages, or not.—Lawson on Usages and Customs, §§ 20, 142-144; 1 Parsons Cont. (6th Ed.) 81. It is on this principle that it was held, in *Walls v. Bailey*, 49 N. Y. 464, that a person, who dealt by an agent in the New York Stock Exchange, must be presumed to have knowledge of its customs, whether he was really cognizant of them or not, and that ignorance would not excuse him.

It has long been settled, that the General Government has a specific lien on imported merchandise, for all duties on such merchandise.—*Harris v. Dennie*, 3 Pet. 292 ; Overton on Law Liens, § 656-57. And a common carrier, if he advance such charges, in the ordinary course of business, is entitled to be reimbursed therefor, upon every consideration of justice, as well as by usage. The authority to carry the goods implies an authority to advance all reasonable back charges, which constitute a lien on the goods, and for which they could be detained ; and such lien is preserved in full force for the benefit of the carrier.—Overton on Law Liens, §§ 140, 135 ; Redfield on Carriers, § 282 ; 2 Redf. on Railways, p. 160, § 13; *Knight v. The Prov. & Wor. R. R. Co.*, 9 Amer. & Engl. Railroad Cases, 90.

The action of the government officials at New Orleans, in raising the appraised value of the goods, and imposing the penalty authorized by the statute for an under-valuation, must be supposed by us to be correct and just, and, therefore, without prejudice to the owner. The presumption is, that these officers did their duty ; and if it were permissible to show negligence on the part of the consignee to sue out an appeal, this could be done only by showing that benefit, and not injury, would have resulted from it. The evidence not only fails to show this, but rather that such appeal would probably have resulted in additional expense and delay, without advantage to the owner.

Brokers, in the discharge of their agency, are bound only to the exercise of reasonable skill and diligence, analogously to the rule governing attorneys at law and other like agents. So long as they are guilty of no bad faith, and exercise the same care and diligence that a prudent man would exercise in the management of a like business, they are entitled to reasonable commissions for their services.—Edwards on Factors & Brokers, § 69 ; 1 Parsons on Contr. (6th Ed.) 100.*

The rulings of the court are, in our opinion, free from error, and the judgment is affirmed.