RAILWAY COMPANY *v.* LEAR.

Decided April 4, 1891.

*Carrier's Lien—Connecting Line—Recoupment.*

A shipper of horses who is present and permits a carrier to receive his horses from a prior carrier and pay advance charges, so as to have a lien therefor on the horses, cannot recoup damages done to the horses by the prior carrier against such lien, though the connecting carrier knew of the damages, and that the shipper intended to demand compensation from the prior carrier.

APPEAL from *Ouachita* County.

CHARLES W. SMITH, Judge.

James B. Lear and another brought replevin against the St. Louis, Iron Mountain and Southern Railway Company for a carload of horses and mules.

It was proved that the plaintiffs were the owners of the horses sued for; that, on August 2, 1888, they shipped the horses from San Antonio, Texas, over the International and Great Northern Railway, via Longview Junction and Texarkana, to Camden, Arkansas; and that said carloads were billed through to that point; that at Longview Junction the International and Great Northern Railway Company delivered the said stock to the Texas and Pacific Railway Company, which, in turn, delivered the same at Texarkana to the defendant railway company, which transported them to Camden, Arkansas, the place of final destination. There was testimony tending to prove that, prior to the delivery of the stock to the defendant at Texarkana, two of the horses, of the value together of $90, had been

killed through the negligence of the International and Great Northern Railway Company, and others had been damaged in the sum of $25, and that the plaintiffs notified the agent of the defendant at Texarkana of this fact, and that they intended to claim damages therefor. It was further proved that, after such notice, the defendant paid to the Texas and Pacific Railway Company the proportion of the freight and charges due it and the International and Great Northern Railway Company by the way-bill, and also the feed charges paid by said companies; that the proportion of the freight due the defendant for transporting said horses from Texarkana to Camden was $35.21; that said stock suffered no injury while in possession of the defendant; that, on the arrival of the horses at Camden, plaintiffs tendered to the defendant the sum of $85.80, claiming a right to recoup the $115 damages suffered by the loss of the two horses and the injury to others against the freight charges of the International and Great Northern Railway Company, and the Texas and Pacific Railway Company; that the defendant refused to surrender the possession without first being paid the total freight and charges, $178.60, and the feed charges paid by it, $22.

The court refused to charge the jury, at defendant's request, as follows:

"3. A common carrier receiving goods in the ordinary course of business, and in the proper line of transit from a connecting carrier, has a lien on the goods for the freight and charges of such connecting carrier, although the goods may have suffered damages before they reached him, while in the hands of such connecting carrier.

"4. When a party ships goods over a line of transit which requires its transportation over the lines of two or more connecting carriers, and does not prepay the freight thereon, but leaves it to be collected by the carrier who transports the goods to the point of final destination, he is presumed to know the rules, regulations and customs among the several carriers as to the responsibility of the last car-

rier to preceding carriers for their proportion of the freight earned by the carriage over their several lines, and should damage occur to the goods while in transit over the roads of the preceding carriers, it would not be just, nor is it allowable in law, to offset such damage against the freight and charges either paid or assumed by the last carrier. The remedy of such shipper is against the carrier doing the damage."

From a judgment in plaintiffs' favor defendant has appealed.

*Dodge & Johnson* for appellants.

Where goods are carried by successive connecting carriers, the last carrier has a lien on them for his freight and for charges paid prior carriers, and the consignee cannot set off against the lien the damage done to goods by the prior carrier.    13 R. I., 572; 16 Ill., 411; 11 Allen, 295; 99 Mass., 220; 32 Pa. St., 270; 4 Greene, Ia., 516; 3 Blatchf., 279; 104 U. S., 146; 107 *id.*, 102; 21 Fed. Rep., 30; 31 *id.*, 248; 131 Mass., 455; 13 B. Mon., 239; Waterman on Set-off, secs. 279–301; Schouler, Bailment, 543–4; 8 Gray, 262; 6 Allen, 246; 6 Humph., 70; 25 Wis., 241, 248, 255; 1 Hilton, 499.

The railroad could not refuse to receive the stock.    12 S. W. Rep., 530, 637.    See also Hutchinson on Car., sec. 108; 48 N. Y., 507; 98 Mass., 240; Hutch. on Car., sec. 478; 27 Mo., 17; 18 Ill., 488; 25 Mo., 79.    The railroad was not liable for damages to the stock before it reached its hands. 42 Ark., 471–2.

*Thornton & Smead* for appellees.

The only question raised by the transcript and appellant's brief is, Has a common carrier a lien upon goods received by it, from a connecting carrier who has given through bill of lading and made through freight, for freight charges paid to such connecting carrier, notwithstanding the goods may have been damaged before reaching him while in the hands of such connecting carrier, and his attention was called to the injury before he advanced, or in any wise became liable for,

such freight and charges, and he was notified that damages would be claimed therefor; and can such damages be set up by way of defense to an action for such back charges?

We concede that where goods are carried by successive connecting carriers, the last carrier has ordinarily a lien for his freight, and that this lien extends to and embraces advances, made in good faith and without notice of damage, to the preceding carrier for their freight, but we contend that this lien only extends to legal charges or such as could have been enforced by law. In other words, that a carrier's lien on goods transported is only co-extensive with his right to claim and recover freight, and that if the International and Great Northern Railway Company and the Texas and Pacific Railway Company, by reason of damage to the stock caused by their negligence, had no legal right to freight, then they had no lien; and, having none themselves, they could not give any to appellants. 6 Whart., 435; 13 Allen, 381; 15 Gray, 223; 42 Vt., 441; 1 Watts, 39; 5 *id.*, 446; 1 Scam., 462; 37 Fed. Rep., 533; 1 Woods, 186; 31 Cal., 53; 36 Ind., 425; 1 Daly, 308; 4 Ind., 358; 1 Lans., 130; 24 N. Y., 278; 40 Ind., 172; 45 Ind., 189; 29 Barb., 56; 4 Seld., 37; 6 Gray, 539; 23 Am. & Eng. R. R. Cases, 732; 9 *id.*, 395; 9 Am. Law Reg., N. S., 539; 93 U. S., 872; 13 Fed. Rep., 37; Lawson on Cont. of Car., secs. 235, 243.

Recoupment against carrier's lien.

HEMINGWAY, J. Each of several lines of connecting carriers, engaging in the transportation of property under a bill of lading for a continuous carriage, may ordinarily pay the charges of previous carriers, and have a lien on the property for the amount advanced, as well as for its own charges. This rule is a part of the commercial law of the land, and, as it is said, of the world, springing from commercial convenience and necessity. It is to the special advantage of the shipper, as well as of the public; for it facilitates rapid transit without breaking bulk, and tends to lower rates. Each carrier is entitled to hold the property until its proper charges are paid, and, but for the rule above

stated, the shipper would be required to arrange in some way for the payment thereof at each point on the route where carriers changed. Convenience and necessity therefore authorize successive carriers to receive property billed, and to advance previous charges and assert a claim for the amount advanced. But as the authority is raised by implication, it will not be presumed where its exercise would apparently prejudice the rights or interests of the shipper. The subsequent carrier should act with a just and proper regard for the owner's interests, and should decline to take the property or advance the charges whenever it has been so damaged in the course of its transit, that it would appear to be against the owner's interest to accumulate charges by further carriage. But as the prior carrier will not deliver the property without payment of its charges, or, what is the same thing, an agreement by the succeeding carrier to pay them, such succeeding carrier cannot be expected or asked to receive it, except in cases where it is authorized to pay the charges. It could not be asked to assume the burden of another's controversy; and if such conditions were imposed, each line would make its own contracts, and thus interrupt the course of transit, to the expense, annoyance and inconvenience of shippers and the public. But the law does not exact this, and is satisfied when the carrier exercises reasonable care and a just regard for the interests of the shipper. *Bissel* v. *Price,* 16 Ill., 408; *Guesnard* v. *L. & N. R. Co.,* 76 Ala., 453; *Bowman* v. *Hilton,* 11 Oh., 304; Jones on Liens, sec. 289.

In this case, the defendant might have declined to receive the horses under the original bill of lading, or, if consistent with its duty to the shipper, might have received them under it and advanced previous charges. Before receiving them and advancing charges, it would ordinarily have been its duty to use due care to ascertain whether such course was to the owner's interest; but in this case the shipper was present, and knew that the horses were tendered to defendant, and did not object to its receiving them. If it was

prejudicial to his interests, good faith required him to declare it; not having done so but having permitted the defendant to receive them, he should not be permitted to recoup damages done by a previous carrier against defendant's claim for freight and charges. The fact that two horses had been killed and that he intended to demand compensation from a prior carrier, was not inconsistent with the belief that it was to his interest to have the other horses carried quickly to the point of consignment. That was all the defendant knew or was told, and that does not show any bad faith as against it, or.justify a reduction of its claim. *Knight* v. *Prov., etc., R. Co.*, 13 R. I., 572.

The court's refusal of the defendant's third and fourth prayers for instructions is sustained by decisions of eminent judges, but they are placed on the same ground—that the last carrier is liable for damage done by any previous carrier, a rule condemned by this court and by the courts of most of the States. *Hot Springs R. Co.* v. *Trippe*, 42 Ark., 471. As there was no evidence of defendent's bad faith in receiving the horses and paying previous charges, the instructions refused should have been given. For the error in their refusal, the judgment must be reversed, and the cause remanded.