GRIFF GLOVER, Appellant, v. CAPE GIRARDEAU & SOUTHERN RAILWAY COMPANY, Respondent.

St. Louis Court of Appeals, June 9, 1902.

1. **Common Carrier: CONNECTING LINES: INITIAL CARRIER IS AGENT OF SHIPPER.** Where goods are shipped to be carried over more than one line of transportation to reach their ultimate destination, the owner can not accompany the shipment, and in the absence of a contrary showing, the law assumes that the owner has stipulated terms with the carrier to whom he delivers his goods for shipment and treats this initial carrier as the agent of the owner in giving directions to connecting carriers; and if his goods are by the fault of the initial carrier (his agent) forwarded to a wrong destination and he loses them, or if the initial carrier selects a circuitous route by reason of which the freight charges are more than they should be or would have been if he had selected a shorter and more direct route, the fault is the fault of the shipper's agent and not of the connecting carriers, and his remedy is against the initial carrier.

Appeal from Stoddard Circuit Court.—*Hon. James L. Fort,* Judge.

AFFIRMED.

*J. R. Young* for appellant.

(1) A common carrier is the agent of the consignee, and is bound "to carefully watch the interest of the owner whoever he may be." "He is bound to do this to the same extent that a prudent man would, were he present acting for himself." "He must see that the previous charges are reasonable before he is authorized to pay them, for it is not every overcharge, which every extortioner through whose hands goods pass *in transitu* may see fit to impose upon them, that he is authorized to pay, and thus fix upon the owner a certain liability." Armstrong v. Railroad, 62 Mo. App. 643; Steamboat v. Kraft, 25 Mo. 80. (2) "A carrier is not bound to pay unjust and unnecessary charges in order to continue transportation; and if payment is made without the consent of the owner, it is at the risk of the carrier." Pierce v. Railroad, 89 Mo. App. 437. "It is not the policy of the law to permit a carrier, by any custom or usage, to protect itself against its own neglect in not ascertaining whether the advance charges were correct and just." Steamboat Vir. v. Kraft, 25 Mo. 80.

*Kitchen & Woody* for respondent.

(1) The Adams Express Company, not having an office in Bloomfield, in the absence of contract or instruction, became the agent of appellant and had authority to select the connecting carrier; and respondent, in the absence of such instructions, had the right, and it was its duty, to accept the package and pay back charges, as is shown to be the custom of express companies. 8 Am. and Eng. Ency. Law (1 Ed.), 970; Briggs v. Railroad, 88 Mass. (6 Allen) 246, 83 Am. Dec. 626; Armstrong v. Railroad, 62 Mo. App. 639; Evans v. Railroad, 76 Mo. App. 472. (2) Respondent, being a common carrier (R. S. 1899, sec. 15, 16)

had a lien on the goods for carriage and back charges paid by it in advance to prior connecting carriers as their compensation for carrying same, and had a right to possession of the same until all charges were paid. R. S. 1899, sec. 8481; 7 Am. and Eng. Ency. Law (1 Ed.), 569, 570; Wells v. Thomas, 27 Mo. 17; Moore v. Henry, 18 Mo. App. 35; 4 Elliott on Railroads, sec. 1570; 8 Am. and Eng. Ency. Law (1 Ed.), 669-675. (3) Appellant's property can not be confiscated nor can "thrifty" companies "enlarge" their income in the manner indicated by appellant, for appellant has his remedy against the wrongdoer for the damage he has suffered. His remedy in this case is against the Adams Express Company, the party guilty of making the mistake. Armstrong v. Railroad, 62 Mo. App. 639; Owen v. Railroad, 83 Mo. 454; Minter v. Railroad, 40 Wis. 294.

BLAND, P. J.—Plaintiff replevied from defendant one box weighing twenty-four pounds and containing one set of single harness. The package was marked, "From Englewood, Illinois, to Griff. Glover, Bloomfield, Mo." It was delivered by the consignor at Englewood (which is in the corporate limits of Chicago) to the Adams Express Company. It was carried by that company to Kansas City, Missouri, and there delivered to the American Express Company, who carried it to Cape Girardeau, Missouri, and there delivered it to a carrier having connection and a joint traffic contract with the defendant. These carriers carried the package to Bloomfield.

The charge of the Adams Express Company for carrying it to Kansas City was ninety cents, which the American Express Company paid and charged one dollar and ten cents for carrying the package to Cape Girardeau. The connecting carrier at Cape Girardeau paid these express charges, amounting to two dollars

and charged thirty-five cents for carrying the package to Bloomfield.

The undisputed evidence is that had the package been shipped by direct line the total charge, according to schedule rates, from Chicago to Bloomfield would have been one dollar and ten cents. Plaintiff tendered this amount to the defendant and demanded the package. Defendant refused the tender and demanded two dollars and thirty-five cents in payment of all the freight charges.

The evidence is that the Adams Express Company had an office in the city of St. Louis and one at Cape Girardeau and that the nearest and most direct route from Chicago by rail to Bloomfield is by way of St. Louis and Cape Girardeau and it is conceded that the Adams Express Company misrouted the package by sending it by way of Kansas City.

There is no evidence that any special directions were given, either by the consignee or consignor as to the route by which the package should be shipped.

The issues were submitted to the court without a jury. Plaintiff at the close of the evidence offered an instruction in effect that under the law and the evidence plaintiff was entitled to recover, which the court refused. No other instructions were asked or given. The court found the issues for the defendant. After taking proper steps to have the rulings of the court reviewed by an appellate court, plaintiff appealed.

It is conceded by appellant that a carrier who receives freight to be forwarded by it from a connecting carrier may pay the reasonable freight charges of the initial carrier and have a lien on the goods for the payment of both the advance and its own freight charges.

The contention is that the advance freight charges paid by the defendant were not the reasonable and customary charges for carrying a like package from Chicago to Cape Girardeau, and that what defendant paid in excess of schedule rates was at its own risk and

that it should have no lien on the goods for more than the usual and schedule charges.

The consignor is ordinarily the agent of the owner of the goods and may stipulate the terms of the shipment, but where no terms are made and the bill of lading is silent upon the question, the initial carrier is regarded as the agent of the owner and is impliedly authorized to select the connecting carrier when the place of destination is beyond its own line, and that it may forward the goods to the place of destination by any of the ordinary routes thereto. 8 Am. and Eng. Ency. of Law (1 Ed.), p. 970.

In Briggs v. Railroad, 6 Allen 246, Briggs delivered flour to the Racine & Mississippi Railroad Company, taking a receipt in which the railroad company agreed to forward and deliver the flour to Franklin Foster at Williamstown, Massachusetts. By mistake the agents of the railroad company directed the flour to Wilmington, a freight station on defendant's road. The flour was carried by the Racine & Mississippi road to the end of its line and delivered to the carrier next in succession and then forwarded by successive carriers until it reached the defendant's line at Groton. The defendant paid all the freight earned by the preceding carriers and carried the flour to Wilmington and deposited it in their freight house. Diligent search and inquiry was made for Foster, the consignee. He could not be found as he did not reside at Wilmington and had no business place there. After keeping the flour for over two months and being unable to find the owner, the flour becoming sour, defendant sold it and received the proceeds of the sale and retained them. Plaintiff contended that as Williamstown was the place of destination, defendant had no right to receive the flour and was guilty of a conversion. In the discussion of this contention the court held that the initial carrier was of necessity invested by the consignor with authority to give requisite and

proper directions to each successive carrier to whom, in due course of transportation, the flour should pass over for the purpose of being forwarded to its ultimate destination and that as a result of this implied authority when the owner delivered the goods to be carried over successive lines to reach their destination, he makes the initial carrier his forwarding agent, and if the several successive carriers carried the goods according to the direction of the initial carrier the "last carrier will be entitled to a lien upon the goods, not only for the freight earned by him on his own part of the route, but also for all the freight which has been accumulated from the commencement of the carriage until he receives them, which, according to a very convenient custom, which is now fully recognized and established as a proper and legal proceeding, he has paid to the preceding carriers."

If the law and custom were otherwise, great inconvenience and hardship would often result to both the owner and the carrier. When goods are shipped to be carried over more than one line of transportation to reach their ultimate destination the owner can not accompany the shipment. In the absence of a contrary showing, the law wisely assumes that the owner has stipulated terms with the carrier to whom he delivers his goods for shipment and justly treats this initial carrier as the agent of the owner in giving directions to connecting carriers and if his goods are by the fault of the initial carrier (his agent) forwarded to a wrong destination and he loses them, or if the initial carrier selects a circuitous route by reason of which the freight charges are more than they should be or would have been if he had selected a shorter and more direct route, the fault is the fault of the shipper's agent and not of the connecting carriers and his remedy is against the initial carrier.

The judgment is affirmed. *Barclay* and *Goode,*

*JJ.,* concur; the former on the authority of Wells v. Thomas, 27 Mo. 17.

OPINION ON MOTION FOR REHEARING.

BLAND, P. J.—In the motion for rehearing appellant contends that the case of Briggs v. Railroad, 6 Allen 246, cited and followed in the main opinion, is not in point. It is true that the flour in the Briggs case was marked to a wrong destination by the agents of the initial carrier. Nevertheless, it was held that the connecting carrier had a right to assume that the shipper and the initial carrier had stipulated the terms of shipment, or if not, that the initial carrier was to be deemed the agent of the shipper and the connecting carriers had a right to so assume and to act on his directions. On this assumption it was ruled that the last carrier, who had paid the charges of all the preceding carriers, had a lien on the flour for the advance charges as well as for the freight earned by it.

It is not the custom, nor does the law require a connecting carrier to whom goods are offered by another carrier to be forwarded, to delay the reception or the forwarding of the goods until he can ascertain whether or not the shipper and the initial carrier stipulated the terms of shipment, and if so what those terms are, and whether or not all the preceding carriers had fulfiled them; or if no terms were stipulated then whether or not the initial carrier had in all things faithfully and honestly discharged his duty as the implied agent of the shipper in forwarding the goods. The law is, that when a shipper delivers goods to a carrier to be carried over successive routes beyond the route of the first carrier, he makes the first carrier his forwarding agent and his acts in directing the shipment of the goods over succeeding routes are the acts of the owner. Wells v. Thomas, 27 Mo. 17; Moses v. Port Townsend, etc., R. R. Co., 5 Wash. 595; Sumner

v. Southern R. R. Ass'n, 7 Baxt. 345; Bird v. The Georgia Railroad, 72 Ga. 655; Mallory v. Burrett, 1 Ed. Smith (N. Y.) 234; Marq., Hought & Ont. R. R. v. Kirkwood, 45 Mich. 51; Wolf v. Hough, 22 Kan. 659; Price v. Denver & R. G. Railway Co., 21 Pac. Rep. 590; Patten, v. Union Pacific Railroad Co., 29 Fed. Rep. 590; Schneider v. Evans, 25 Wis. 241.

Hutchinson on Carriers (sec. 108) states the law as follows: "When goods are delivered to the carrier for the purpose of being carried to a point beyond the terminus of its route, and for that purpose to be delivered by him to a connecting carrier in order to continue the carriage, or where it becomes necessary for that purpose to make successive deliveries from one to another upon a continuous line or succession of carriers, the first and each succeeding carrier becomes the agent of the owner of the goods to make delivery to the next carrier; and it is incumbent upon him to do so not only to relieve himself from further liability, but because it is a duty which he owes to the owner, and which he has assumed with the acceptance of the goods. He is the party in charge of them, and the only one with whom the succeeding carrier can make the necessary arrangements, and stands toward them for this purpose in the position of an owner."

Where the last carrier acts in good faith and in the usual course of business, his right to a lien for advance charges and for his own freight bills can not be defeated on account of any special contract between the first carrier and the shipper of which he did not have notice, nor for any mistakes made by the first or any intermediate carrier in giving directions for the forwarding of the goods. Wells v. Thomas, Briggs v. Railroad, supra. The shipper's remedy is against the first carrier for a wrong direction of the goods or for charges (if they are the customary or schedule ones) in excess of a through rate agreed upon by the shipper and the first carrier. Arkansas & Louisiana

Railway Co. v. Smith, 53 Ark. 275; Detroit & Bay City Railway v. McKenzie, 43 Mich. 609; Schneider v. Evans, Sumner v. Railroad, Wells v. Thomas, supra; Moore v. Henry, 18 Mo. App. (K. C.) 35. On this point the law is stated as follows at pages 406 and 407, volume 5, Am. and Eng. Ency. of Law (2 Ed.): "The better doctrine is that this lien is not affected by the fact that the last carrier received them by mistake or through some error or wrongdoing on the part of one of the previous lines, providing the carrier claiming the lien has itself been free from wrong; if its receipt of the goods in violation of the directions of the shipper is due to any wrongful act on its own part or any improper agreement with a connecting line, it can claim no lien for any charges whatever."

There is no evidence that any stipulations were entered into between the shipper and the Adams Express Company (the first carrier) as to the routing of the shipment. The bill of lading, if any was issued by the Adams Express Company, was not put in evidence. It is therefore impossible to ascertain from the abstracts whether or not a route was agreed on between the Adams Express Company and the shipper. In the absence of such proof we must assume that the shipper impliedly, if not expressly, authorized the Adams Express Company to route the shipment and that as between the connecting carriers and the owner the latter is bound by the route selected by his agent, the Adams Express Company, and to look to it for compensation for the overcharges occasioned by the erroneous routing.