crete Company, which was building certain houses for defendant. The said corporation abandoned the job, leaving the debt to plaintiffs mentioned in the complaint unpaid. Some of the material had gone into defendant's houses, and some are claimed by defendant to have been used in a house near by belonging to one Mrs. Morgan, but there is some evidence tending to show that defendant paid the corporation for materials used in the houses both of Mrs. Morgan and defendant. Defendant continued the work, and plaintiffs supplied more materials. The plaintiff claims that defendant agreed to pay the debt of the corporation, which is denied by defendant. There is sufficient evidence that, with the knowledge and consent of the defendant, a large portion at least of the materials furnished by plaintiffs to the corporation were used in defendant's houses. Also there is evidence, which the jury could believe, that the defendant promised to pay the debt of the corporation as a part consideration for plaintiffs continuing to supply materials for defendant's houses after the default of the corporation, and that, in virtue of that consideration, further materials were actually delivered by plaintiffs to defendant and used in defendant's houses, thus constituting performance of the contract on the part of plaintiffs.

The record discloses no errors of vital importance, and the judgment should be affirmed.

---

(65 Misc. Rep. 179.)

NEW YORK CENT. & H. R. R. CO. v. WEIL et al.

(Supreme Court, Appellate Term. November 30, 1909.)

1. CARRIERS (§ 193*)—CONNECTING CARRIERS—TRANSPORTATION OF LIVE STOCK.
   The last of several connecting carriers of live stock is entitled to collect the lawful charges of its connecting carriers.

   [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 868–869; Dec. Dig. § 193.*]

2. CARRIERS (§ 193*)—TRANSPORTATION OF CATTLE—SELECTION OF CARRIER.
   Where cattle were detained by federal officers in a quarantined district while in the hands of the last connecting carrier in accordance with the routing, and defendants obtained a release of the stock from quarantine on condition that they be shipped to destination entirely through New York state, which was impossible if carried by the last connecting carrier, which thereupon turned over the cars to plaintiff whose line reached the destination wholly through New York state, plaintiff thereby became the last connecting carrier, and was therefore entitled to recover its lawful charges and those of its connecting carriers.

   [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 868–869; Dec. Dig. § 193.*]

3. CARRIERS (§ 219*)—TRANSPORTATION OF CATTLE—DELAY—ACTION OF PUBLIC AUTHORITIES.
   Where cattle were delayed by a quarantine imposed by the public authorities in the exercise of police power, such delay and the resulting injury to the cattle could not be charged as negligence against the carrier in possession thereof.

   [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 950; Dec. Dig. § 219.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. CARRIERS (§ 219*)—TRANSPORTATION OF LIVE STOCK—QUARANTINE—FEED AND WATER.

    It was the duty of a connecting carrier to feed and water live stock in its possession during a delay caused by an official quarantine.

    [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 950; Dec. Dig. § 219.*]

Appeal from Municipal Court, Borough of Manhattan, Third District.

Action by the New York Central & Hudson River Railroad Company against Louis Weil and another. Judgment for plaintiff, and defendants appeal. Affirmed.

Argued before GILDERSLEEVE, P. J., and SEABURY and LEHMAN, JJ.

Bamberger & Lowenthal (Sidney Lowenthal and L. E. Schlechter, of counsel), for appellants.

Alex S. Lyman (William Mann, of counsel), for respondent.

SEABURY, J. This action was brought to recover $241.93, alleged to be the amount due for feeding and transportation charges on a car load of live stock, which had been delivered to the Michigan Central Railroad Company at Chicago for transportation to Brooklyn, N. Y., at which place they were delivered to and accepted by the defendants. The answer is, in effect, a general denial and counterclaim. The counterclaim alleges that the defendants purchased 17 cows, 17 calves, and 4 "springers" in good condition in Chicago on November 19, 1908; that this stock was shipped from Chicago to Brooklyn; that the usual charge for such transportation is only $63.40, and the usual time for such transportation is only three days; that the plaintiff negligently handled and unreasonably delayed the delivery of said stock to the extent that two "springers" died before they were delivered, resulting in damage in the amount of $130, and that, by reason of such negligence, the remaining live stock lost weight and became injured in condition to the further damage of $600, for all of which defendants sought to recover $730. The lower court rendered judgment in favor of the plaintiff for the amount claimed.

On November 19, 1908, the property was delivered to the Michigan Central Railroad Company at Chicago for delivery to the defendants at New York City. It was consigned via the Michigan Central and the Delaware, Lackawanna & Western Railroads. On November 21st, about 10 a. m., the property arrived at Bridgeburg, Ontario, at which place the cattle were watered and fed. On November 21st, about 4 p. m., the property arrived at Black Rock, N. Y., at which place it was delivered by the Michigan Central Railroad to its connecting carrier, the Delaware, Lackawanna & Western Railroad. On November 21st, about 6 p. m., the property arrived at the freightyards of the Delaware, Lackawanna & Western Railroad at East Buffalo. When the property arrived at East Buffalo, Erie county and five of the adjoining counties were under state and federal quarantine, which prohibited the shipment of cattle therefrom. Notices of the quarantine

were posted in the yard of the Delaware, Lackawanna & Western Railroad at East Buffalo during the morning of November 21st, and the cattle were sent "right straight through to New York, started on its way to New York." On November 20th the inspector in charge of the United States Department of Agriculture wrote to the agent of the Delaware, Lackawanna & Western Railroad at East Buffalo a letter which was received by the agent on the morning of November 21st. The letter prohibited the unloading of shipments of cattle within the quarantined territory except when unloaded for feed, rest, and water, and directed that cars containing live stock should be sealed upon entering and when passing through the quarantine area. Pursuant to this order, the car containing the cattle was sealed before it left East Buffalo and presumably before it arrived there by one of the government officials. On November 22d, the superintendent of the Delaware, Lackawanna & Western Railroad at East Buffalo was ordered by the quarantine authorities not to permit the car to proceed to New York, but to return it to East Buffalo. The car had reached Goldsboro, a point 250 miles distant from East Buffalo, and was returned to East Buffalo, arriving there about 2:30 p. m. on November 23d, and was finally unloaded about noon on November 24th. Here the cattle were held under quarantine for the period of two weeks, during which time two cows died. Upon receiving notice that his cattle were being held under quarantine orders, one of the defendants went to Buffalo, interviewed the federal and state quarantine authorities and the officials of the Delaware, Lackawanna & Western Railroad Company, and requested the agent of the railroad company to ship the cattle to New York. The quarantine officials by order released the cattle on December 5th, on condition that the cattle be sent to their destination through the state of New York. The Delaware, Lackawanna & Western Railroad Company could not transport the cattle over its road by keeping them in the state while so doing, so they were turned over to the New York Central & Hudson River Railroad Company, the plaintiff in this action, for transportation. The cattle were delivered by the plaintiff and accepted by the defendants on December 8, 1908, 19 days after they were shipped from Chicago.

Two aspects of the case present themselves for consideration: First, whether the plaintiff can recover the charges of its predecessors; and, second, whether under the counterclaim the negligence of the plaintiff's predecessor was proven.

1. The plaintiff as the last carrier of the freight was entitled to collect the lawful charges of its preceding carriers. This is a right long sanctioned by law and custom, and is founded in public convenience and common sense. Travis v. Thompson, 37 Barb. 236; Merrick v. Gordon, 20 N. Y. 93. In the case last cited Judge Comstock said:

"The freight, being entire for the whole distance between New York and Cleveland, was not due until the goods arrived there. It was then due to the plaintiffs (the last carrier) because they were then the carriers having the goods at their destination subject to the charge. When the defendant received them, he promised, in judgment of law if not in fact, to pay the amount of that charge, and on that promise the suit is founded."

It is claimed that the Delaware, Lackawanna & Western Railroad Company and the New York Central Railroad Company are parallel, but not connecting, lines, and that, therefore, the rule which allows the last carrier to collect the lawful charges of its predecessors does not apply.

Under the facts in this case, the plaintiff stood in the same position as a connecting carrier, because the public authorities permitted the cattle to be carried to their destination only upon condition that they should be carried through New York state. This requirement made it impossible for the Delaware, Lackawanna & Western Railroad Company to transport the cattle over its own lines, and it thereupon availed itself of the services of the plaintiff. In doing this it adopted the only means by which the cattle could be transported in conformity with the direction of the public authorities. We are satisfied that the plaintiff alleged and proved a cause of action against the defendants.

2. The plaintiff having proved a cause of action, it becomes necessary to consider whether the defendants have established their counterclaim. This counterclaim, as has already been pointed out, is based upon the alleged negligence of the Delaware, Lackawanna & Western Railroad Company, the plaintiff's predecessor. No claim is made that the plaintiff or the Michigan Central Railroad Company were guilty of any negligence. The charge of negligence is predicated solely upon the action of the Delaware, Lackawanna & Western Railroad Company in handling the cattle. My own view is that the defendants cannot counterclaim against the plaintiff for damage caused to their cattle for the negligence of the preceding carrier while the cattle was upon its lines. Merrick v. Gordon, 20 N. Y. 93; 6 Cyc. 496. In 6 Cyc. 496, it is said that:

"The right of the consignee or owner to offset damages against freight cannot be asserted against the last carrier with reference to damages on the line of the preceding carrier, either as to the last carrier's charges or the charges which he had advanced to the preceding carrier; the remedy being against the carrier in whose hands the damage occurred."

It seems, however, to have been assumed both at the trial and upon the argument of this appeal that, if the cattle suffered injury through the negligence of the Delaware Lackawanna & Western Railroad, the defendant might properly counterclaim their damages in the present action. Assuming, without deciding, that this is so, we think that the trial court was justified in its finding of fact that the Delaware, Lackawanna & Western Railroad Company was not guilty of negligence. The facts recited above show that the cause of the delay in transporting the cattle was the action of the public authorities. The action of the public authorities was taken in the exercise of its police powers, and delay caused by reason of such action cannot be justly attributed to the carrier. During the time that the cattle were in the custody of the Delaware, Lackawanna & Western Railroad Company it was, of course, obligated to feed and water them. The evidence does not show that it failed in this duty, or that the cattle were injured by reason of any omission of duty on the part of the carrier. From whatever stand-

point this judgment is examined, there appears no good reason why it should be disturbed.

Judgment affirmed, with costs. All concur.