[Civil No. 1448.   Filed July 1, 1915.]

[149 Pac. 753.]

ARIZONA EASTERN RAILROAD COMPANY, a Corporation, Appellant, v. FRANK R. STEWART, Appellee.

1. SETOFF AND COUNTERCLAIM — ACTIONS BY ASSIGNEE — DEFENSES.—
   Ordinarily, a party, when sued on a contract for services by the party rendering them or his assignee, may plead in offset any damages sustained by the negligent performance of the contract.

2. CARRIERS—ACTIONS FOR FREIGHT—PARTIES—INITIAL CARRIER.—In an action by the terminal carrier for freight charges on a shipment of livestock, including charges advanced by it to the initial carrier, where the shipper claimed that the stock was injured by the negligence of the initial carrier, the initial carrier is not a necessary party.

   [As to liability of initial carrier of livestock for negligence or torts of connecting carrier, see note in 106 Am. St. Rep. 609.]

APPEAL from a judgment of the Superior Court of the County of Maricopa.   J. C. Phillips, Judge.   Reversed and remanded.

Mr. Eugene S. Ives, for Appellant.

Messrs. Hayes & Laney, for Appellee.

PER CURIAM.—The appellant, who was plaintiff below, instituted this action against appellee, defendant below, to recover the freight and feeding charges on five carloads of

cows shipped from San Luis Obispo, California, to Phoenix, Arizona, over the line of the Southern Pacific Company, and the line of the plaintiff, under arrangements made by defendant with the Southern Pacific Company at the initial point of shipment. It is alleged in the complaint that the cows were received by defendant from plaintiff at or about the time the shipment reached Phoenix and defendant refused to pay transportation charges; that the interstate commerce rate for the carriage of livestock in carload lots from San Luis Obispo to Phoenix is $145.60 as published and filed with the Interstate Commerce Commission; that the feeding charges, amounting to $75.70, were paid by the Southern Pacific Company; "that pursuant to a traffic arrangement between the said Southern Pacific Company and this plaintiff made only for the purpose of the convenience of the railroads and the public in the collection of rates and the movement of freight and such as is common among the carriers doing business in the United States, whereby the delivering carrier pays the initial or connecting carriers its or their proportions of the entire rate and collects the same from the shipper, the plaintiff has paid the said Southern Pacific Company said sum of $75.70 and its proportion of said rate." The defendant demurred to the complaint on the ground that the Southern Pacific Company was not made a party, it appearing the contract of carriage was made by it and for its account and not in behalf of and account of plaintiff; that the services were rendered by the Southern Pacific Company, and it nowhere appears that said services were rendered for or inured to the benefit of plaintiff; and that it does not appear that the plaintiff is the owner or assignee of said demand or is the agent of said Southern Pacific Company or in any wise authorized to sue for or in behalf of said Southern Pacific Company; that the complaint failed to state facts sufficient to constitute a cause of action against defendant. The defendant answered, alleging a breach of the contract of carriage by the Southern Pacific Company and plaintiff, in that they failed to deliver five head of the cows, and the ones delivered were seriously crippled, weakened, sick and damaged. He counterclaimed, alleging actual and punitive damages occurring on the Southern Pacific Company's line by reason of its negligence in the sum of $3,695. The demurrer was sus--

tained, and, plaintiff standing upon its complaint, judgment was entered that it take nothing and that defendant have his costs.

The question before us involves the soundness of the court's ruling sustaining the demurrer to the complaint, and the matters set up in the answer, aside from the demurrer, are not germane, except as they may be useful to illustrate the contentions of defendant to the effect that, unless the Southern Pacific Company is made a party plaintiff, he will be deprived of his defense of negligence on the part of the latter company. The plaintiff company is not charged with negligence, and no loss or injury was sustained by defendant by reason of any misconduct on its part. The damages pleaded as a defense and counterclaim all occurred on the line of the Southern Pacific Company. Ordinarily, a party when sued upon a contract for services, whether by the party contracting to render the services or by his assignee, may plead in offset any damages he has sustained by reason of the negligent performance of the contract. The assignee takes the chose in action, in such cases, subject to any defenses available to the debtor against the assignor. In that case, it is not necessary to make the assignor a party plaintiff, as the defense is open to the debtor without it. If that rule were applied in this case, it would not be a test of the sufficiency of the plaintiff's complaint, but would afford the defendant the opportunity to offset his damages, if any, against the demand of the plaintiff.

For reasons considered by the courts of sufficient weight and importance to justify it, the above general rule has not been enforced as to demands for carriage over two or more connecting lines. Independent carriers may require of the shipper prepayment of the freight charges if disposed to do so, and, where the shipment is over several lines of carriers, it is apparent that this would unduly burden the shipper. Carriers for their own convenience and the convenience of their patrons have adopted the rule of letting each successive carrier pay the preceding one its proportion of the charges, leaving it to the last carrier to collect the whole freight and expense from the consignee. In this manner, when the freight reaches its destination, although it may have passed over the lines of many carriers, all of them have been paid, except the

last, and the shipper, instead of having to deal with all the carriers in the matter of their charges, may settle with the terminal one who in the course of the business has become the owner of and entitled to all charges. The law is stated by 6 Cyc. 495, as follows:

"A connecting carrier may advance the charges of the preceding carrier, including charges which the preceding carrier may have already advanced in the same way, and demand the full amount of his own charges and the advancements at the end of the transportation. However, a connecting carrier is under no obligation to make such advances or to give credit therefor to the preceding carrier, even though it is customary to do so. The last carrier advances charges to the preceding carrier at his own risk, and if they have in fact been paid he cannot recover them, at least where he is chargeable with notice of the fact of such prepayment. The right of the consignee or owner to offset damages against freight cannot be asserted against the last carrier with reference to damages on the line of the preceding carrier, either as to the last carrier's charges or the charges which he has advanced to the preceding carrier, the remedy being against the carrier in whose hands the damage occurred."

See Elliott on Railroads, secs. 1569, 1570; 4 R. C. L., secs. 320, 355.

The purposes and limitations of the rule are well stated by Justice HEMINGWAY in *St. Louis, I. M. & S. Ry. Co.* v. *Lear,* 54 Ark. 399, 15 S. W. 1030, in which the precise question we have here was involved:

"Each of several lines of connecting carriers, engaging in the transportation of property under a bill of lading for a continuous carriage, may ordinarily pay the charges of previous carriers, and have a lien on the property for the amount advanced, as well as for its own charges. This rule is a part of the commercial law of the land, and, as it is said, of the world, springing from commercial convenience and necessity. It is to the special advantage of the shipper, as well as of the public; for it facilitates rapid transit without breaking bulk, and tends to lower rates. Each carrier is entitled to hold the property until its proper charges are paid, and, but for the rule above stated, the shipper would be required to arrange in some way for the payment thereof at each point on the

route where carriers changed. Convenience and necessity therefore authorize successive carriers to receive property billed, and to advance previous charges and assert a claim for the amount advanced. But, as the authority is raised by implication, it will not be presumed where its exercise would apparently prejudice the rights or interests of the shipper. The subsequent carrier should act with a just and proper regard for the owner's interest, and should decline to take the property or advance the charges whenever it has been so damaged in the course of its transit that it would appear to be against the owner's interest to accumulate charges by further carriage. But as the prior carrier will not deliver the property without payment of its charges, or, what is the same thing, an agreement by the succeeding carrier to pay them, such succeeding carrier cannot be expected or asked to receive it, except in cases where it is authorized to pay the charges. It could not be asked to assume the burden of another's controversy; and, if such conditions were imposed, each line would make its own contracts, and thus interrupt the course of transit, to the expense, annoyance and inconvenience of shippers and the public. But the law does not exact this, and is satisfied when the carrier exercises reasonable care and a just regard for the interests of the shipper. *Bissel* v. *Price*, 16 Ill. 408; *Guesnard* v. *Railroad Co.*, 76 Ala. 453; *Bowman* v. *Hilton*, 11 Ohio, 304; Jones on Liens, sec. 289.''

The final carrier must act in good faith in paying or agreeing to pay preceding carriers, as also in receiving the shipment, in order to be entitled to demand and collect the freight charges from the consignee.

''Speaking of the rule by which a succeeding carrier can pay the charges of the previous one, the opinion (*Bissel* v. *Price*, 16 Ill. 408) says the authority to make such payment extends no further than is reasonably required by the necessities of commerce; that, in making such advances for the consignee, the carrier is bound to act in good faith and with ordinary prudence in ascertaining the goods to be in good condition and the previous charges reasonable; that, when he has done this, he has done all the law requires of him, and the owner is bound to recognize and sanction his action in making the advances.'' *Berry Coal & Coke Co.* v. *Chicago,*

*P. & St. L. Ry. Co.,* 116 Mo. App. 214, 92 S. W. 715, 720; *Wabash R. R.* v. *Pearce,* 192 U. S. 179, 48 L. Ed. 397, 24 Sup. Ct. Rep. 231; *Glover* v. *Cape Girardeau, B. & S. R. Co.,* 95 Mo. App. 369, 69 S. W. 599; *Seaboard Air Line Ry.* v. *Southern F. & G. Co.,* 138 Ga. 604, 75 S. E. 654; *New York Central & H. R. R. Co.* v. *Weil,* 65 Misc. Rep. 179, 119 N. Y. Supp. 676; *Southern Pacific Co.* v. *Larabee,* 89 Kan. 608, 132 Pac. 205.

In interstate commerce shipments, the initial carrier by act of Congress is made liable for loss occurring anywhere en route, with the right to recover over against the carrier actually causing the loss. *Atlantic Coast Line R. R. Co.* v. *Riverside Mills,* 219 U. S. 186, 55 L. Ed. 167, 31 Sup. Ct. Rep. 164, 31 L. R. A. (N. S.) 7; *St. Louis Southwestern Ry. Co.* v. *Alexander,* 227 U. S. 218, Ann. Cas. 1915B, 77, and notes, 57 L. Ed. 486, 33 Sup. Ct. Rep. 245.

But as was said in *Southern Pacific Co.* v. *Larabee, supra,* "this does not affect the liability for compensation."

The judgment of the lower court is reversed, with directions to overrule the demurrer.